ARMELLINI EXPRESS LINES OF FLORIDA, INC. et al., Appellants,

v.

MARILYN ANSLEY, Appellee.

No. 1512.

Court of Civil Appeals of Texas, Corpus Christi.

June 26, 1980.

Rehearing Denied Aug. 29, 1980.

**300**

John H. Boswell, Sharon S. Stagg, Boswell, O'Toole, Davis & Pickering, Houston, for appellants.

Bert L. Huebner, Bay City, John M. O'Quinn, Riddle, Murphrey, O'Quinn & Cannon, Houston, for appellee.

## OPINION

NYE, Chief Justice.

This is a personal injury case arising out of a vehicular collision. Marilyn Ansley (appellee herein) sued Armellini Express Lines of Florida, Inc., Armellini Express Lines, Inc., Armellini Express Line, Inc., (collectively Armellini herein), William Larry Duckett (driver), David C. Martin (relief driver), and Green Acres Farm for damages which resulted when the pickup truck she was driving collided with a semi–trailer truck owned by Armellini and driven by Larry Duckett. After a lengthy trial, the jury found a number of acts of negligence on the part of the Armellini truck driver (Duckett) which were the proximate cause of the occurrence in question. The jury acquitted Mrs. Ansley of contributory negligence. As a result of the jury findings, the trial court entered a judgment awarding Mrs. Ansley damages as found by the jury. The defendants appeal.[1]

The collision occurred sometime between 11:00 p. m. and 12:00 p. m. on March 27, 1977, on FM 149, a two–lane road, and near the entrance to Green Acres Farm which is located between the towns of Tomball and Pinehurst, Montgomery County, Texas. It was a dark, clear night with good weather conditions. The roadway was dry. No lights were present in the Green Acres Farm driveway or yard.

Green Acres is a nursery located on the west side of FM 149 and is connected to the roadway by a driveway. Immediately prior to the accident, Duckett, the driver of the Armellini "tractor/trailer rig," accompanied by Martin, his relief driver, were attempting to make a delivery to Green Acres Farm. Duckett, who originally had approached Green Acres Farm from the south on FM 149, passed the entrance to Green Acres Farm and reached the town of Magnolia before he realized his mistake. He then turned and traveled south on FM 149, again passing the entrance to Green Acres Farm, until he neared Decker Prairie located south of his destination. He again turned the truck around and proceeded north on FM 149 toward his destination. Duckett, who was driving in the northbound lane, stopped just beyond the entrance of the driveway of Green Acres Farm. He then proceeded to back the rig across the southbound lane into the driveway.

At the time of the collision, Duckett was making his second or third attempt to back the truck into the driveway. The truck was in a jack–knifed position with tractor unit remaining in the northbound lane, facing almost north and the trailer unit being angled in a southwesterly direction toward the driveway, blocking the southbound lane and the shoulder of FM 149. The plaintiff, Marilyn Ansley, was driving in the southbound lane of FM 149 and was approaching Green Acres Farm at the same time the truck was in the jack–knifed position across the road. Mrs. Ansley's pickup truck struck the Amellini trailer in the middle and went partially underneath the trailer unit pinning her inside the wreckage of her pickup

---

1. A take nothing judgment was entered in favor of David C. Martin (relief driver) and Green Acres Farm. They are not parties to this appeal.

truck for nearly an hour, all of which caused her severe injuries.

In response to special issues one and two, the jury found that the Armellini truck driver was negligent in the following respects which were the proximate cause of the collision in question:

 a. "In failing to give an adequate warning to the Southbound traffic that his trailer was in the Southbound lane."

 b. "In failing to warn Marilyn Ansley that her lane of travel was blocked after he saw her approaching."

 c. "In failing to move out of Marilyn Ansley's lane of traffic after he saw her approaching."

 d. "His look out."

 e. "In backing across Marilyn Ansley's lane of traffic under the circumstances existing when he did so."

In response to the damage issues, the jury found the following amounts would compensate Mrs. Ansley for the damages she sustained as a result of the occurrence in question:

| | | |
|---|---|---|
| $33,500 | (S.I. #6) | medical expenses – past |
| 60,000 | (S.I. #7) | medical expenses – future |
| 26,000 | (S.I. #8) | loss of earning capacity – past |
| 273,000 | (S.I. #8b) | loss of earning capacity – future |
| 10,000 | (S.I. #8c) | physical pain and mental anguish – past |
| 220,000 | (S.I. #8d) | physical pain and mental anguish – future |
| 1,000 | (S.I. #8e) | loss of household services – past |
| 22,000 | (S.I. #8f) | loss of capacity to perform household tasks – future |
| 100,000 | (S.I. #8g) | physical impairment – past |
| 200,000 | (S.I. #8h) | physical impairment – future |
| 6,000 | (S.I. #8i) | disfigurement – past |
| 88,000 | (S.I. #8j) | disfigurement – future |

The jury failed to find that Mrs. Ansley was negligent with respect to "her look out," the "[a]pplication of her brakes," or "[h]er speed until time of impact." In accordance with the answers to these special issues, the trial judge entered a judgment awarding Mrs. Ansley damages totally $1,039,500.00 against Armellini and Duckett, jointly and severally.

This is an appeal from the second jury trial of this case. On January 10, 1979, the trial judge, on his own motion granted a new trial after the first jury verdict had been received. Thereafter, Mrs. Ansley filed her second amended original petition and Armellini Express Lines, Inc. and Martin filed pleas of privilege. On March 21, 1979, after a hearing, the trial judge entered an order overruling the pleas of privilege.[2] The cause then proceeded to a trial on the merits.

■ Although the issues on appeal are somewhat limited, we received a voluminous brief from the appellants, comprising some 138 pages and containing 116 points of error. Even a cursory examination of this brief reveals that the crux of appellants' complaints are obscured by numerous unfounded complaints which, in effect, would require this Court to re–try the entire case. A closer examination of the brief reveals that several of the points of error which are grouped together for purposes of argument and authority with a group of other points are either not briefed at all, or the extent of the briefing is limited to a few sentences of general conclusory statements and arguments unsupported by any authorities. The Rules of Civil Procedure, as well as our local rules, emphasize the policy that briefs should be brief and concise and that points of error should not be unnecessarily numerous. See Rule 418, Texas Rules of Civil Procedure, and our local rules printed in the appendix to *Continental Oil Co. v. Dobie*, 552 S.W.2d 183 (Tex.Civ.App.–Corpus Christi 1977, writ ref'd n.r.e.). Although we could and probably should have required a complete rebriefing, we did request the appellants to file a summary of their points of error and arguments. Subsequently, appellants filed a lengthy summary brief, which contained almost 50 pages, which still did not indicate any of appellants' major contentions. During oral arguments, appel-

---

**2.** Although the trial court's adverse plea of privilege ruling was subsequently appealed and then consolidated with the appeal from the case on the merits, the appeal from the order overruling the pleas of privilege were expressly abandoned by the appellant.

lants argued only three main areas (with several sub–points) which they contend "clearly" warrant a reversal of this case. Their first major contention concerns the damages awarded by the jury which, appellants say, are not supported by any evidence, or, in any event, are so excessive as to require a remittitur. Related to the damages issue is appellants' second major complaint which is that the exclusionary instructions that they requested were erroneously omitted from the charge to the jury. Appellants' third major complaint concerns the form in which the contributory negligence questions were submitted to the jury and the trial court's failure to include their requested contributory negligence questions.

Since we did not require a rebriefing, we have carefully read the entire record and considered each and every point of error. However, in the interest of brevity, this opinion will consider only appellants' primary complaints in detail.

The trial court's charge contained one negligence special issue and one proximate cause special issue, each one containing five subparts inquiring whether certain acts of the Armellini truck driver (Duckett) constituted negligence and the proximate cause of the occurrence in question. In points of error 1 through 32, appellants complain, in essence, that there is "no evidence" or "insufficient evidence" to support the submission of any of the subparts of the negligence and/or the proximate cause issues to the jury. In addition, appellants contend that there is "no evidence," or "insufficient evidence" to support the answers to these special issues, and the answers to such issues are "against the great weight and preponderance of the evidence." In deciding appellants' "legal sufficiency" of the evidence points, we, of course, must review the evidence in its most favorable light to support the jury's findings and the trial court's judgment, considering only the evidence and inferences which support the factfinding and rejecting all contrary evidence and inferences. See *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex.Sup.1974); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.

1965). In deciding appellants' "factual sufficiency" points, we review all of the evidence. See *In Re King's Estate*, 244 S.W.2d 660 (Tex.Sup.1951).

Mrs. Ansley testified, in substance, that as she crested a small hill going south, she saw headlights facing her in the opposite northbound lane. To her, the headlights appeared to be the headlights of an approaching vehicle. She sensed no danger and continued on, unaware that these headlights were those of the Armellini truck which was jack–knifed across her lane of traffic. Mrs. Ansley testified that she did not become aware that something was blocking her lane until just before she cleared the headlights of the Armellini truck. Although she tried to apply her brakes, it was too late to avoid the collision. Duckett, the driver of the Armellini truck, testified by deposition. He stated that he saw Mrs. Ansley shortly after she crested the hill when she was about ¼ of a mile away. At this time, he was attempting, for the second or third time, to back into the driveway of Green Acres Farm. He continued backing in order to clear the roadway. Duckett saw her again when she was about "half the distance of the straightway" from him. He then continued to watch her until impact. Duckett admitted that he did not use flares, reflectors, or other warning devices to warn possible approaching traffic. His relief driver, Martin, was watching out the right side of the tractor to insure that Duckett did not hit a mailbox that was located near the driveway. Duckett admitted that he did not ask Martin to flag traffic while he was backing into the farm. After he saw Mrs. Ansley, Duckett also admitted that he did not blow his horn, he did not flash his headlights or truck lights to warn her, nor did he attempt to drive forward to move his truck out of her southbound lane. He further admitted he had time to clear the south side of the roadway and shoulder after he saw Mrs. Ansley's approaching vehicle.

There is conflicting evidence in the record concerning whether the 4–way flashers or the trailer sidelights were on or not before

the wreck. Mrs. Ansley testified that she saw no 4–way flashers or clearance lights. Tom Alyea, an off–duty police officer who arrived on the scene from the same direction as Mrs. Ansley shortly after the accident, stated that he saw no 4–way flashers or clearance lights as he approached. Duckett and Martin testified that the lights were on. B. J. Snow, the investigating officer who arrived some 30 or 35 minutes later, gave conflicting testimony on whether the 4–way flashers or clearance lights were on or not when he arrived. The jury was at liberty to believe or not the various witnesses.

In addition to this testimony, the jury also heard the testimony of Armellini's repairman who inspected the truck prior to the accident; two accident reconstruction specialists; three professional, expert truck drivers; and Marvin Turner, the son of the defendant owner of Green Acres Farm. Turner testified, in summary, that the Turners considered backing into their driveway so dangerous that it was not generally permitted. He stated the Turners try to meet delivery trucks so they can help to warn any approaching traffic and to help unload the trucks. He testified Armellini had been instructed prior to the occurrence in question to have the driver call by telephone to alert the Turners of an impending delivery so they would be available to assist in warning traffic. Duckett admitted he made no effort to call the Turners even though he knew they lived on the property. There is conflicting evidence concerning whether backing across the road was the only way, the safest way, or the wrong way to make a delivery to the Green Acres Farm. Alyea (the off–duty police officer) testified that, as he approached the accident scene, he observed the headlights of the Armellini truck but could not see the trailer that was across his lane. Approximately 100 yards from the accident he saw a man flagging traffic and stated that, had he not seen the flagman posted there after the accident, he would not have slowed his vehicle.

Examining this evidence in detail and all of the other evidence in the record in accordance with the rules for appellate review, we are of the opinion that there was ample evidence in the record to support not only the submission of each negligence and proximate cause issue, but also the jury's answers as well. We conclude also that such answers are not so against the great weight and preponderance of the evidence as to be manifestly unjust. *In Re King's Estate*, 244 S.W.2d 660 (Tex.Sup. 1951). See also *City of Beaumont v. Graham*, 441 S.W.2d 829, 835 (Tex.Sup.1969); *Lynch v. Ricketts*, 314 S.W.2d 273 (Tex.Sup. 1958); and *Clark v. Brewer*, 498 S.W.2d 957, 959 (Tex.Civ.App.–Corpus Christi 1973, no writ).

Appellants' points of error 34 through 53 attack the jury's negative findings on the special issues submitted inquiring as to whether Mrs. Ansley was negligent and attack the trial court's failure to submit the appellants' requested special issues concerning her alleged negligence. The court submitted the following special issues:

SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that Marilyn Ansley was negligent in the operation of her vehicle on the occasion in question as to any of the following matters:

| | Yes | No |
|---|---|---|
| a. Her lookout | | No |
| b. Application of her brakes | | No |
| c. Her speed until the time of impact | | No |

Answer "Yes" by writing "Yes" in the appropriate space if you find from a preponderance of the evidence that she was negligent; otherwise, answer "No" by writing "No" in the appropriate space. If you have answered "Yes" to any of the matters listed in Special Issue No. 3 , then answer this Special Issue.

Special issue no. 4, which was set out in the same format as above was the proximate cause issue. Appellants contend that these issues were submitted in "a very general,

undefined manner which was insufficient to inform the jury as to the nature and extent of Appellee's duty as an ordinarily prudent driver," and that their requested special issues were improperly refused by the trial judge. We do not agree.

■ The form in which special issue no. 3 was submitted to the jury is specifically authorized by the 1973 amendments to Rule 277, Texas Rules of Civil Procedure. (See the fourth paragraph of this rule.) The rules require only that each controlling issue raised by the pleadings and the evidence be submitted once, fairly, simply, and succinctly. See 1, Texas Pattern Jury Charges, p. 11 (Supp.1973). No error is present. See also *Northeast Texas Motor Lines v. Hodges*, 158 S.W.2d 487, 489 (Tex. Sup.1942), and see *Keyser v. Lackey*, 523 S.W.2d 295 (Tex.Civ.App.–Corpus Christi 1975, no writ); *Samford v. Duff*, 483 S.W.2d 517 (Tex.Civ.App.–Corpus Christi 1972, writ ref'd n.r.e.).

Points of error 34 through 49, which are grouped together for argument and authority purposes, present, for the most part, legal sufficiency attacks upon the trial court's submission of the contributory negligence issues and the jury's answers to those issues and, in addition, present factual sufficiency attacks against the jury's answers to these special issues.

■ In addition to the testimony of Mrs. Ansley, the record contains the deposition testimony of the truck driver and his relief driver assistant, several accident reconstruction specialists, and a policeman who arrived on the scene of the occurrence in question shortly after the accident. To substantiate their position that Mrs. Ansley was negligent with regard to her speed, look out, and application of her brakes, the appellants relied primarily upon the testimony of Grubbs and Thornhill, accident reconstruction specialists. Their opinions were based upon their study of the accident scene and reconstruction of the events that took place. Their opinions concerning Mrs. Ansley's conduct were contradicted by other evidence, including the testimony of two disinterested witnesses (Alyea and Snow) who arrived on the scene the night of the accident and corroborated plaintiff's testimony concerning the visibility of the jack-knifed truck and Mrs. Ansley's ability to stop in time. The evidence is uncontradicted that Mrs. Ansley could not have been able to avoid the truck by driving around it as the entire roadway and part of the shoulder were blocked. The answers to the special issues were supported by evidence and are not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Opinion testimony is not binding on the jury. *McIlroy v. Wagley*, 437 S.W.2d 5 (Tex.Civ.App.–Corpus Christi 1968, writ ref'd n.r.e.). Here, there is ample evidence in the record from which the jury could reasonably conclude that appellant truck driver's action in blocking the entire roadway did not become reasonably apparent to Mr. Ansley in time for her to have avoided the accident.

Appellants' points of error 97 through 104 complain of certain jury arguments made on behalf of Mrs. Ansley which included references to income tax, inflation, attorneys' fees, and their effects on any award made by the jury. Appellants also complain of certain references to appellants' witnesses.

We have searched the record and find no reference to the jury arguments made on behalf of Mrs. Ansley to the subject matter of attorneys' fees. Appellants cite eight other arguments during summation which, they contend, were outside of the record and were incurable. We disagree. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.Sup.1979), our Supreme Court discussed the standards for determining whether jury arguments are so improper as to necessitate a reversal. In that case, Justice Pope, writing for the majority, stated as follows:

"In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct or a motion for

mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. 3 McDonald, Texas Civil Practice, § 13.-17.2 (1970). There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree, and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." (citations omitted.)

 The court overruled only one of appellants' objections. As to all of the other objections, they were sustained or the appellants obtained no ruling. The appellants failed to press for an instruction by the trial judge to the jury to disregard the argument. Even if the challenged arguments were error, each and every one of them was curable by a proper request and instruction by the trial judge. Where an improper jury argument is curable by instruction, any complaint on appeal is waived by the failure to object and to press for an instruction at the time the argument is made. *Standard Fire Insurance Co. v. Reese*, supra. See also *Pride Transport Co., Inc. v. Hughes*, 591 S.W.2d 631 (Tex.Civ. App.–Eastland 1979, writ ref'd n.r.e.); *Dover Corp. v. Perez*, 587 S.W.2d 761 (Tex.Civ. App.–Corpus Christi 1979, writ ref'd n.r.e.); *Bosquez v. H. E. Butt Grocery Co.*, 586 S.W.2d 680 (Tex.Civ.App.–Corpus Christi 1979, writ ref'd n. r. e.). Here, the appellants, after making an objection, asked for a mistrial in a perfunctory manner at the same time they objected. They did not follow the proper procedure set out in *Reese*. Several of the complained of arguments were invited and provoked and, as such, were not error. *Hartford Acc. & Indem. Co. v. Thurmond*, 527 S.W.2d 180 (Tex. Civ.App.–Corpus Christi 1975, writ ref'd n.r. e.). In looking at the whole record, the state of the evidence, the strength and weakness of the case, and the verdict, we conclude that the jury carefully considered its verdict and the evidence. The probabilities are very high that the jury would have reached its same conclusion from the evidence without regard to the arguments of which appellants complain.

The remaining points of error concern the damage awards and contain appellants' major contentions. Concerning her condition prior to the accident, Mrs. Ansley testified that she was 32 years old and was in excellent health with no physical disabilities. At that time, she was not under the care of a doctor, she was taking no medication, and was able to do hard physical work, including lifting and carrying objects weighing 50 to 75 pounds. Her general good health was corroborated by two other disinterested witnesses.

The testimony concerning the events immediately following the accident showed that Mrs. Ansley was pinned in her pickup truck for approximately one hour while ambulance personnel and other people tried to pull her truck apart in order to get her out. She was found in a conscious state with the steering wheel mashed into her chest and stomach. She testified that she thought she was paralyzed and had no feelings in her legs and low back. She could not see because there was glass and blood in her eyes and she was choking on blood from the other head injuries she had received. After she was removed from the wreckage, she was taken by ambulance to the emergency room of Tomball Hospital, which did not have the necessary equipment to treat her serious injuries. The medical personnel present examined her and summoned the "Life–Flight" helicopter which arrived with

medical personnel from Herman Hospital in Houston. After performing an emergency tracheotomy on Mrs. Ansley, she was flown by helicopter to Herman Hospital.

The pertinent evidence concerning the extent of Mrs. Ansley's injuries was presented through the testimony of three doctors: Dr. T. O. Moore; Dr. Richard DeYoung; and Dr. James E. Cowart. Voluminous medical records and many x-rays were introduced into evidence. Several non-medical witnesses testified as to her injuries and disability. Appellants' counsel conceded during oral arguments that "[t]here is no doubt Marilyn Ansley received significant, serious injuries."

Dr. T. O. Moore, a Board Certified orthopedic surgeon and Chief of Staff at Herman Hospital, first examined Mrs. Ansley when she was brought to the hospital by the helicopter. His initial examination in the emergency room revealed that she was in shock and in a great deal of pain. Mrs. Ansley had a severe laceration across her left forehead, multiple facial fractures of the jawbone, and "obvious fracture of the left knee and obvious fracture of her right thigh above the knee." Dr. Moore described her abdomen as being "severely contused," and that she had incurred multiple small bowel lacerations as a result of her injuries. In addition, she had a fracture of her arm, which was deformed between the shoulder and the elbow on the left side. At that time, the most immediate problem facing Dr. Moore was to get Mrs. Ansley out of shock and take care of her abdominal injuries. He described in detail the operation which he conducted with two other general surgeons to explore her abdominal cavity, repair the perforation tears, and stop the bleeding.

After the initial operation, Mrs. Ansley was taken to the Intensive Care Unit, where she was placed in traction and in an oxygen unit. Dr. Moore testified that the next surgical procedure which was conducted by Dr. Goepfert was "to wire and fix the fractures on her face." During this operation, pins and wires were used to hold her broken jaws, teeth, and facial bones together. Thereafter, she returned to the Intensive Care Unit where she remained under constant observation until a week or so later, when Dr. Moore performed orthopedic surgery on her legs. Dr. Moore testified that he found her left kneecap so severely broken that he had to remove part of it. He then wired the tendon that attaches to the kneecap and the remainder of the kneecap together. He also operated on her right thigh to repair the fractured femur which was broken in so many places that he had to use a rod and plate to stabilize it. He testified that the rod was driven through the bone marrow canal of the femur and the plate was thereafter attached to the outside of the femur by metal screws.

Both Dr. Moore and Mrs. Ansley testified as to the intense pain she experienced during her hospitalization. Dr. Moore stated that, while she was in intensive care, Mrs. Ansley required pain medication about every three or four hours, "which is just about as often as we could give it to her." After the surgery was completed, Mrs. Ansley was moved from the Intensive Care Unit to a private room. At this time, both of her legs were in a cast, her left arm was in a cast, her jaws remained wired, and she was placed on oxygen. Her condition was such that the doctor prescribed that nurses be with her 24 hours a day to be sure that she did not choke while her jaws were wired. Mrs. Ansley was hospitalized for approximately three months. She was finally discharged from the hospital because she was worried about her five children who were staying with "different people" and she was depressed because she was away from her family. At the time Mrs. Ansley left the hospital, she was still in a leg cast with a hip brace and left in a wheelchair. After she returned home, she remained in the wheelchair some 2 or 2½ months but, at the same time, was attempting to use a walker around the house in order to rebuild strength in her legs.

In points of error numbers 95 and 96, appellants complain that the trial court erred by refusing to submit to the jury, with the damage issues, the following special instructions:

"Do not include any amount for any condition not resulting from the injuries, if any, which resulted from the occurrence in question."

"Do not include any amount for any condition resulting from failure, if any, of Marilyn Ansley to care for and treat her injuries, if any, which resulted from the occurrence in question, as a person of ordinary prudence would have done under the same or similar circumstances."

Appellants contend that, because the evidence established that appellee had prior, unrelated injuries and conditions, and established that appellee acted in such a manner so as to aggravate her injuries, the trial court erred by refusing to submit the requested limiting instructions.

Our review of the record reveals that appellants submitted a written request for special issues and instructions "en masse," and in a confusing manner, rather than separately as required by Rule 274, T.R.C.P. Only part of the requested special issues, or related clusters pertaining to the same special issues, were requested separately. The two requested special instructions do not appear separately. They are completely unrelated to any of the special issues appellants requested.

 When special issues and instructions are submitted "en masse" rather than submitting each issue and instructions or cluster of issues and instructions separately, no error is presented by the trial court's refusal to submit one specific issue or instruction, especially where any of the issues or instructions as requested was improper or was already included in the charge. *Edwards v. Gifford*, 155 S.W.2d 786, 788 (Tex. Sup.1941); *Swinney v. Winters*, 532 S.W.2d 396, 404 (Tex.Civ.App.–San Antonio 1975, writ ref'd n.r.e.); *Griffey v. Travelers Insurance Company*, 452 S.W.2d 725, 727 (Tex. Civ.App.–Amarillo 1970, writ ref'd n.r.e.). It is not error for the trial judge to refuse such requested submissions when they are intermingled in such a way as to be confusing. *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 101 (Tex.Civ. App.–Amarillo 1971, writ ref'd n.r.e.).

Additionally, the facts of this case do not support the special instruction appellants requested as to Mrs. Ansley's alleged pre–existing condition. Appellants seem to contend that Mrs. Ansley had a pre–existing back condition, easily separable from the injuries she sustained in the occurrence in question. The record does not support such an interpretation of the facts.

Mrs. Ansley testified that, at the time of trial, she was experiencing considerable pain, including pain in the region of her lower back. Dr. DeYoung, a Board Certified orthopedic surgeon who examined Mrs. Ansley one time prior to trial, testified that he x–rayed her back and found a narrowing at the L–5 and the sacrum. He found all other disc spaces and the alignment of the vertebrae to be normal. Dr. DeYoung testified, in substance, that he thought such narrowing evidenced "degenerative [back] disease" attributable to the aging process. Dr. Moore testified that it was difficult to determine the source of the lower back pain Mrs. Ansley experienced. He reviewed the extent of her injuries and enumerated several injuries caused solely by the accident which could account for her back pain and which would severely aggravate her back condition. Although he agreed that the narrowing of the lumbar interverbral space generally can be caused by degenerative changes as well as by injury, Dr. Moore was of the opinion that Mrs. Ansley's back problems arose from the accident. Dr. Cowart, a family practice physician who examined Mrs. Ansley prior to trial, agreed the injuries Mrs. Ansley received in the accident caused her low back problems and stated that such degeneration is not consistent with Mrs. Ansley's young age.

 It is the settled rule of law in this state that where the injured party in a personal injury suit is suffering from an infirmity not caused by the accident and where injuries flowing from the prior existing infirmity and those flowing from the negligence of the defendant are closely intermingled to the extent that the jury might become confused and allow for improper elements of damages, the trial court

should affirmatively charge the jury that the plaintiff is entitled to recover only to the extent that his injuries *were aggravated* by the defendant's negligence. (emphasis added.) *Dallas Ry. & Terminal Co. v. Ector,* 116 S.W.2d 683 (Tex.Sup.1938); *J. M. Dellinger, Inc. v. McMillon,* 461 S.W.2d 471 (Tex.Civ.App.–Corpus Christi 1970, writ ref'd n.r.e.). Appellants contended that Mrs. Ansley's back difficulties were caused solely by a pre–existing degenerative condition and requested an instruction excluding from the jury's consideration all pre–existing conditions. Appellants' requested instruction, however, failed to contain the necessary proviso that Mrs. Ansley was entitled to recover to the extent that such pre-existing condition was aggravated by appellants' negligence. Since the requested instruction was not in substantially correct form, the trial court's failure to include it in the charge does not present reversible error. *J. M. Dellinger, Inc. v. McMillon,* 461 S.W.2d 471 (Tex.Civ.App.–Corpus Christi 1970, writ ref'd n. r. e.); Rule 279, T.R.C.P. The cases upon which appellants rely are clearly distinguishable.

We are also of the opinion that the record does not support the submission of the limiting instruction appellants requested requiring the jury not to include any amount for any condition resulting from Mrs. Ansley's failure to care for and treat her injuries as a person of ordinary prudence would have done under the same or similar circumstances. Appellants contend that this instruction was necessary because Mrs. Ansley had gained some 50 to 60 pounds after the accident and has not taken off such weight as recommended. They contend that her "weight control is a matter which is particularly within her own power to change" and, that her failure to do so necessitated the inclusion of such instruction.

It was undisputed that Mrs. Ansley had gained weight since the occurrence in question. Dr. Moore testified, in substance, that it was not uncommon for a young, active person like Mrs. Ansley to gain weight upon becoming immobilized after sustaining severe injuries. He also testified that, from an orthopedic point of view, considering the condition of her legs, the cast she wore and the narrowing of the lumbar space region in her back, the additional weight "does not help" Mrs. Ansley because such additional weight places "more stress" on the extremities and "presents some aggravation." Dr. Moore stated he gave Mrs. Ansley a diet and an exercise program to follow in an effort to control her weight. Dr. Moore testified that Mrs. Ansley "has been dieting, she has tried." He further testified that Mrs. Ansley "has been a pleasant, co-operative patient" who has tried very hard to get well.

Dr. DeYoung testified that, in his opinion, Mrs. Ansley would not have gained the additional weight had she not received her severe injuries, but, he thought, her lengthy immobilization was of less causal significance than "nervousness" which "was more likely to cause people to overeat."

Dr. Cowart testified that he examined Mrs. Ansley and her x–rays prior to trial. After describing her condition generally, he stated that Mrs. Ansley complained of low back pain which was more noticeable on the right lateral aspect of the right thigh and into the right knee. He stated that he viewed the x–rays of her right thigh and the rod in her left femur, and of her left knee. The x–rays of her left knee revealed a spur on the bottom surface of the left knee which, he stated, was indicative of degenerative changes. In addition, his examination revealed crepitation (the noise made by rubbing together the ends of a fractured bone), also indicative of degenerative changes. In his opinion, based upon reasonable medical probability, Mrs. Ansley would have arthritis in those joints. Dr. Cowart continued by stating the following:

" . . . but more importantly from the trauma standpoint is the weight gain. She has put on 50 or 60 pounds since this accident occurred and that much excessive weight will in time create all kinds of problems if she doesn't get it off."

Dr. Cowart stated that, in his opinion, Mrs. Ansley's weight gain was probably caused by her injuries because she was no longer

able to engage in the same type of physical activity she had previously engaged in and because she suffered emotional trauma inflicted by the injuries. He also stated that it would be more difficult for her than for a normal person to lose weight because she was limited in the amount of physical exercise she could undergo.

*Moulton v. Alamo Ambulance Service, Inc.*, 414 S.W.2d 444 (Tex.Sup.1967) is one of the leading Texas authorities on the doctrine of mitigation of damages in personal injury cases. In that case, the Supreme Court applied this doctrine to the facts of that case and required an exclusionary instruction to be included in the charge to the jury because the injured person, who was employed at the time of the accident by a vending machine company, failed to follow his doctor's instructions, thereby causing him to sustain injuries of a greater severity than that which he received in the accident. The exclusionary instruction in the *Moulton v. Alamo Ambulance Service, Inc.* case covers situations in which: 1) there is evidence of negligence on the part of the plaintiff in failing to consult a doctor; 2) in failing to consult a doctor as soon as a reasonable prudent person would; 3) in failing to follow a doctor's advice; 4) in failing to properly care for and treat injuries which do not require the attention of a doctor.

█ We are of the opinion that, from all of the evidence in this case, the evidence fails to raise the issue that Mrs. Ansley was negligent in gaining weight after her accident. At most, the evidence in the record indicates that all of the doctors thought it would be in her best interest for Mrs. Ansley to lose weight; that her treating physician prescribed a diet and exercises; that Mrs. Ansley has tried to lose weight; and that she had not yet lost weight. There is no evidence that Mrs. Ansley failed to follow the prescribed diet and exercise routine, nor is there any evidence of the results her doctor expected if she followed the diet and exercise routine. There is some evidence in the record to indicate that Mrs. Ansley's weight will aggravate the injuries she received in the accident in question. How-

ever, the requested instruction requires the jury to exclude any *condition* resulting from Mrs. Ansley's failure to care for and treat her injuries as a person of ordinary prudence would have done under the same or similar circumstances. There is no evidence in the record from which the jury could reasonably conclude that any of Mrs. Ansley's "conditions" resulted solely from her excess weight. Nor is there any evidence in the record from which the jury could reasonably evaluate and conclude that a particular portion of the damage element was attributable or would be attributable solely to her excess weight. Under these circumstances, we are of the opinion that the trial court did not err by refusing to include the proffered instruction in the charge which was submitted to the jury. The cases upon which appellants rely are clearly distinguishable as involving a conscious disregard by the injured person of the doctor's orders and medical testimony from which a jury could reasonably conclude that, had the injured person followed the doctor's orders, a particular result would have been achieved. See *Moulton v. Alamo Ambulance Service, Inc.*, 414 S.W.2d 444 (Tex.Sup.1967); *City of Fort Worth v. Satterwhite*, 329 S.W.2d 899 (Tex.Civ.App.–Fort Worth 1959, no writ).

█ We next consider points of error 54 through 94 concerning damages awarded by the jury to compensate Mrs. Ansley for her injuries. The major problem we have had in considering these points of error is that appellants' argument and authorities pertaining to these points of error are limited solely to the contentions that the damages awarded by the jury are so excessive that we should reverse and remand for a new trial or, in the alternative, require a remittitur because the verdict is so excessive that it cannot be supported by the evidence, citing *Greyhound Lines, Inc. v. Craig*, 430 S.W.2d 573 (Tex.Civ.App.–Houston [14th Dist.] 1968, writ ref'd n. r. e.); *Best Steel Bldgs., Inc. v. Hardin*, 553 S.W.2d 122, 133 (Tex.Civ.App.–Tyler 1977, writ ref'd n.r.e.). Apparently, appellants do not seriously contend their "no evidence" points because, in

addition to not discussing them, appellants do not seek a reversal and rendition as to any damage element not supported by evidence. Appellants' complaint concerning the excessiveness of the jury's award and their request for a remittitur is further complicated because they failed to request a remittitur in the trial court. We seriously question whether appellants have preserved their right to obtain a remittitur. See *Collins v. Smith*, 175 S.W.2d 407 (Tex.Sup. 1943).

Even if we did not consider the "no evidence points" to be waived, they would be overruled on the merits anyway. In considering appellants' "no evidence" or "legal sufficiency points" we, of course, must review the evidence in its most favorable light to support the submission of these elements of damage in question, considering only the evidence and inferences which support such elements and rejecting the evidence and inferences contrary to these elements. *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex.Sup.1974); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965). Appellants' point of error no. 85 concerning the form in which special issue no. 8(a) was submitted to the jury is not discussed at all in the brief and is accordingly waived. Considering appellants' factual sufficiency points, we shall consider all of the evidence. See *In Re King's Estate*, 244 S.W.2d 660 (Tex.Sup.1951). In disposing of the "remittitur" point as excessive, we consider only the evidence that is favorable to the award. *Wharf Cat, Inc. v. Cole*, 567 S.W.2d 228 (Tex.Civ.App.–Corpus Christi 1978, writ ref'd n. r. e.); *Sunset Brick & Tile, Inc. v. Miles*, 430 S.W.2d 388 (Tex.Civ.App.–Corpus Christi 1968, writ ref'd n. r. e.). The rule is that, on appeal, the findings by the jury will not be disturbed on the ground of excessiveness (if there is any probative evidence to sustain the award). In the end, the Appellate Court should not substitute its judgment for that of the jury in absence of a rather clear showing of passion, bias or prejudice. After such a review of the evidence, and if the end result is that the award is so excessive that it shocks the conscience of the Appellate Court, a remit-

titur would be proper. *World Oil Co. v. Hicks*, 103 S.W.2d 962 (Tex.Com.App.1937 judg't adopted), reaffirmed in *Dallas Ry. & Terminal Co. v. Farnsworth*, 227 S.W.2d 1017 (Tex.Sup.1950). *Sunset Brick & Tile, Inc. v. Miles*, 430 S.W.2d 388 (Tex.Civ.App.– Corpus Christi 1968, writ ref'd n. r. e.); *Dover Corp. v. Perez*, 587 S.W.2d 761 (Tex. Civ.App.–Corpus Christi 1979, writ ref'd n. r. e.).

### Future Medical Expenses

In response to special issue no. 7, the jury found that the sum of $60,000.00 would compensate Mrs. Ansley for reasonable expenses for necessary medical, doctor and hospital care which she may, in reasonable probability, require in the future for the treatment of her injuries resulting from the occurrence in question. Dr. Moore and Dr. Cowart testified in substance that Mrs. Ansley will require significant future medical care. Dr. DeYoung disagreed. Dr. Moore testified Mrs. Ansley would need routine medical care for the rest of her life which would cost "barring any complications, probably in the neighborhood of $800.00 to $1000.00 per year" based on today's prices. The evidence also showed that, based upon the insurance life expectancy tables, Mrs. Ansley had a life expectancy of 44.2 years. Dr. Moore, a committee member of the Harris County Medical Society concerned with the cost of medical care, testified that medical costs are increasing about 12% per year. In addition to these expenses, there is some evidence in the record concerning the need for future surgery. Dr. Moore testified that Mrs. Ansley will, in reasonable medical probability, require an operation to remove the rod currently placed in her femur, and that the reasonable cost for such surgery and the associated medical services at today's prices is about $2,500.00. In addition, Dr. Moore testified that there was a good chance that Mrs. Ansley would require knee and back surgery which, at today's prices, would cost about $10,000.00 for both operations. Dr. Cowart testified that, in his opinion, Mrs. Ansley would require both the knee and back disc surgery.

The award of future medical expenses is a matter about which no precise evidence is required, it being a matter particularly for the jury, and one upon which the jury may make its award based upon the nature of the injuries, the medical care rendered before the trial, and the condition of the injured party. *City of Houston v. Moore*, 389 S.W.2d 545 (Tex.Civ.App.–Houston 1965, writ ref'd n. r. e.); *Edens–Birch Lumber Co. v. Wood*, 139 S.W.2d 881 (Tex. Civ.App.–Beaumont 1940, dism'd judg. corr.). See *Texas Steel Company v. Recer*, 508 S.W.2d 889 (Tex.Civ.App.–Fort Worth 1974, writ ref'd n. r. e.). In addition, the life expectancy tables are based upon averages and are not binding upon the jury. *Roberts v. Tatum*, 575 S.W.2d 138 (Tex.Civ. App.–Corpus Christi 1978, writ ref'd n. r. e.); *Greyhound Lines, Inc. v. Craig*, 430 S.W.2d 573 (Tex.Civ.App.–Houston [14th Dist.] 1968, writ ref'd n. r. e.). The trier of facts is not precluded from exercising considerable personal judgment as to how far such opinions are to be relied upon. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.Sup.1970); *Broussard v. Moon*, 431 S.W.2d 534 (Tex.Sup.1968).

Here, Dr. Moore's annual estimate, times Mrs. Ansley's life expectancy, plus the projected cost for each of these surgeries that both Dr. Moore and Dr. Cowart testified about almost equals the amount of the jury award. The jury was also at liberty to consider the increased cost of medical care and may have believed that Mrs. Ansley would live longer than the number of years based upon the life expectancy table. See *Southwestern Bell Tel. Co. v. Thomas*, 535 S.W.2d 686 (Tex.Civ.App.–Corpus Christi 1976, rev'd on other grounds, 554 S.W.2d 672 (Tex.Sup.1977). Therefore, after viewing all of the evidence, we find that there was sufficient evidence to support the jury's answer to special issue no. 7 and such answer was not so manifestly excessive and unjust as to require the Court to grant a remittitur.

3. There is no point of error attacking the jury's award for past physical pain and mental anguish.

*Physical Pain, Mental Anguish, Physical Impairment and Disfigurement past & future*

Appellants group together for discussion past[3] and future physical pain, mental anguish, physical impairment and disfigurement. Appellants contend that even taking into consideration the diminishing value of the American dollar, the total award is outrageous and excessive.

This Court, in *Southern Pacific Transportation Co. v. Peralez*, 546 S.W.2d 88, 98 (Tex.Civ.App.–Corpus Christi 1976, writ ref'd n. r. e.), stated:

"Because personal injury damages are unliquidated and not capable of measurement by a certain standard, the jury has large discretion in fixing the amount of the award. *Gallegos v. Clegg*, 417 S.W.2d 347 (Tex.Civ.App.–Corpus Christi 1967, writ ref'd n. r. e.); *Phillips Petroleum Company v. R. T. Burkett*, 337 S.W.2d 856 (Tex.Civ.App.–Fort Worth 1960, writ ref'd n. r. e.). In awarding these damages, the jury is entitled to consider the constant decrease in the value of the dollar. *Johnston Testers v. Rangel*, 435 S.W.2d 927 (Tex.Civ.App.–San Antonio 1968, writ ref'd n. r. e.); *Texas Consolidated Transportation Company v. Eubanks*, 340 S.W.2d 830 (Tex.Civ.App.–Waco 1960, writ ref'd n. r. e.)."

These same principles were recognized again by this Court in the case of *Wharf Cat, Inc. v. Cole*, 567 S.W.2d 228, 233 (Tex. Civ.App.–Corpus Christi 1978, writ ref'd n.r. e.).

This case presents a case of significant injuries, of considerable past and probable future pain and mental anguish, considerable past and future disfigurement, and physical impairment. The record is replete with evidence concerning the pain Mrs. Ansley suffered prior to trial and the pain and suffering she will probably endure for the rest of her life. At the time of trial, some two years after her injuries, Mrs. Ans-

ley remained on pain medication. Unquestionably, Mrs. Ansley's injuries are permanent, which, because of the very nature of her injuries and the attendant pain, severely limits her physical movements. She is unable to engage in any of the recreational activities she engaged in before her injuries. Mrs. Ansley has suffered substantial disfigurement to her face and body. She now views herself as ugly and feels "like an old hag." There is ample evidence in the record from which the jury could reasonably conclude that Mrs. Ansley has suffered, and will continue to suffer, substantial mental anguish concerning her injuries and her ability to take care of herself and her family. There is also evidence in the record that, during the few months before the trial, her condition had worsened after having stabilized. Mrs. Ansley was 32 years old when she was injured. After thoroughly reviewing the entire record in this case, we cannot say that the jury's answers to these special issues are against the great weight and preponderance of the evidence or that they are so excessive as to require a remittitur.

### Loss of Household Services

The jury awarded $23,000.00 for past and future loss of household services. Appellants contend that because Mrs. Ansley testified that she has not "since the date of the accident paid out any money to any person for assistance with household help," and that because, at the time of trial, "she herself could do much of the household work and could take care of the baby," but that what she does not do is done by her husband and children, the jury's award for loss of capacity to perform household services is unsubstantiated. Additionally, appellants argue that because Mrs. Ansley has paid no money for hired help, this is not an element of damages which is properly awarded to her at all. Appellants' argument and authority portion of the brief applicable to this point of error contain one short paragraph in which they cite no authorities.

 As a general rule, the jury can determine damages for loss of household services based upon their knowledge and sense of the value of a wife's services. *Arando v. Higgins*, 220 S.W.2d 291 (Tex.Civ. App.–El Paso 1949, writ ref'd n. r. e.). While evidence of the cost of domestic help is admissible, such evidence is not required, nor does it limit the recovery as such. A plaintiff will not be denied recovery for this element of damages where there is proof in the record of the nature of the household services rendered before the injuries and that the injuries received have impaired her capacity to perform such household services in the future. *C. E. Duke's Wrecker Service, Inc. v. Oakley*, 526 S.W.2d 228 (Tex. Civ.App.–Houston [1st Dist.] 1975, writ ref'd n. r. e.). Mrs. Ansley was substantially impaired in performing household services. Prior to the occurrence in question, she did most of the housework herself. Now, her children and husband do most of the work around the house. Based upon the record before us, we cannot say that the jury's answer to this special issue is against the great weight and preponderance of the evidence or that a remittitur is required.

### Lost Earnings and Future Earning Capacity

The jury awarded Mrs. Ansley the sum of $26,000.00 to compensate her for her "loss of earning capacity" in the past and the sum of $273,000.00 to compensate her for her "loss of earning capacity" in the future. Appellants contend that "there is no evidence whatsoever to support" these awards and that this Court should, therefore, suggest a remittitur of the entire amount.

 Recovery for loss of earning capacity as a measure of damages in a personal injury suit is not recovery of actual earnings but, rather, recovery for the loss of the capacity to earn money. See *McIver v. Gloria*, 169 S.W.2d 710, 713 (Tex.Sup.1943); *City of Houston v. Holden*, 336 S.W.2d 193 (Tex.Civ.App.–Eastland 1960, writ ref'd n. r. e.). A plaintiff who seeks damages for impairment or loss of earning capacity must introduce into evidence some monetary measure of earning capacity or have some reason for failing to do so. The amount of

damages resulting from the impairment of a plaintiff's earning capacity must be left largely to the sound judgment and discretion of the jury. The jury, on the other hand, should not be left to mere conjecture where facts appear to be available upon which the jury could base an intelligent answer. *Bonney v. San Antonio Transit Company*, 325 S.W.2d 117, 120 (Tex.Sup. 1959).

■ The amount which the plaintiff might have earned in the future is always uncertain and must be left largely to the sound judgment and discretion of the jury. Therefore, no general rule can be laid down except that each case must be judged upon its particular facts and the damages proved with that degree of certainty of which the case is susceptible. *McIver v. Gloria*, 169 S.W.2d 710, 712 (Tex.Sup.1943).

The record reflects that Mrs. Ansley had a sporadic work history prior to her accident. She had several short-term jobs between the years 1963 and 1973. In 1975, Mrs. Ansley began housecleaning as outside employment, working in partnership with another woman. The business was just getting started in 1975, when she earned approximately $500.00 to $600.00 for part-time work. In 1976, Mrs. Ansley started cleaning a number of houses by herself for regular customers. On November 10, 1976, Mrs. Ansley's son, David, was born. She quit work some 3 or 4 weeks before he was born, and after the beginning of 1977, she commenced work again. The accident occurred on March 23, 1977. Mrs. Ansley testified that she could not state her exact income in 1976 because a fire in her home destroyed all of her records. Mrs. Ansley did state that immediately prior to the accident, she was working and making about $50.00 a day or about $250.00 a week in her work of housecleaning and office cleaning.

Mrs. Ansley has not worked since the accident. There is conflicting testimony in the record concerning her ability to work in the future. One of the doctors, who does physical employment examinations for various companies, testified that Mrs. Ansley could not pass a physical examination to work, and for any type of physical work, such as the housecleaning work Mrs. Ansley did prior to the occurrence in question, she is now totally disabled. He further testified that she would have difficulty holding down a clerical job because she cannot sit for long periods of time, and has a severe condition of pain which limits her ability to do prolonged sitting or mental work and that she also takes medications which dull her mind. A "vocational consultant" testified that in her opinion there were several jobs Mrs. Ansley could do. These ranged from a taxi–cab dispatcher to a receptionist, with salaries from $450.00 to $800.00 per month.

■ After thoroughly reviewing the record, we are of the opinion that there is evidence from which the jury could reasonably conclude that Mrs. Ansley would be incapable of returning to productive work. There is some evidence in the record from which the jury could reasonably conclude that the same type of work (office and housecleaning) pays more than $50.00 a day. In addition, the jury was entitled to consider the constant decrease in the value of the dollar and commensurate increases in salaries. *Robert v. Tatum*, 575 S.W.2d 138, 143 (Tex.Civ.App.–Corpus Christi 1978, writ ref'd n. r. e.); *Southern Pacific Transportation Co. v. Peralez*, 546 S.W.2d 88 (Tex.Civ. App.–Corpus Christi 1976, writ ref'd n. r. e.).

■ We therefore conclude that there is evidence in the record to support the jury's award and that such award is not against the great weight and preponderance of the evidence. In addition, we find nothing in the record to show bias, prejudice, or other improper motive on the part of the jury that would warrant disturbing the jury's award. The amount awarded by the jury is supported by the evidence and does not offend the conscience of this Court. We, therefore, decline to substitute our judgment for that of the jury. See *McIver v. Gloria*, 169 S.W.2d 710 (Tex.Sup.1943); *Dallas Consolidated Electric St. Ry. Co. v. Motwiller*, 101 Tex. 515, 109 S.W. 918 (1908); *Sunset Brick & Tile, Inc. v. Miles*, 430

**314**

S.W.2d 388 (Tex.Civ.App.–Corpus Christi 1968, writ ref'd n. r. e.).

We have considered all of appellants' points of error and they are overruled. The judgment of the trial court is affirmed.