James A. GREEN, Jr., et al., Appellants,

v.

A. K. MEADOWS, Appellee.

No. 16318.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 21, 1975.

Rehearing Denied Sept. 18, 1975.

Fulbright & Jaworski, Thomas P. Sart-welle, Russell H. McMains, Houston, for appellants.

Moore, Morris & Payne, Louis M. Moore, Houston, for appellee.

## OPINION ON REMAND

COLEMAN, Chief Justice.

This is a suit for damages for malicious prosecution. The only questions before us under the mandate of the Supreme Court relate to the excessiveness of the damages allowed by the jury. See *Green v. Meadows*, 517 S.W.2d 799 (Tex.Civ.App.—Houston [1st Dist.], 1974); *Meadows v. Green*, 524 S.W.2d 509 (Tex.1975).

The appellants, James A. Green, Jr. & Company and James A. Green, Jr., have filed a brief for the consideration of this court since the case was remanded. The first point of error presented was the 21st point of their original brief which they assert is germane to assignments of error 12 and 13 in their motion for new trial. In our original opinion we pointed out that all points containing great weight and insufficient evidence terminology are germane to assignments that begin "The court erred in submitting to the jury" and "in rendering judgment." We held that these points raised the issue of the legal sufficiency of the evidence to support the jury's answers and did not raise a question as to the factual sufficiency of the evidence to support the jury's answers. This holding was approved by the Supreme Court in its opinion remanding this case. There was sufficient evidence to require that the issue be submitted to the jury and the trial judge was required to enter judgment on the verdict returned by the jury.

The second point of error is a restatement of appellants' 22nd point in their original brief which was asserted to be germane to assignments of error 12, 13 and 14 in appellants' motion for new trial. By assignment of error no. 14 the appellants properly assigned error in their motion for new trial to the trial court's refusal to order a remittitur. While assignment no. 13 is duplicitous it asserted that a new trial should be granted for the reason that "the jury's answer to special issue 6d was so against the overwhelming weight and preponderance of the evidence and is manifestly so large and excessive as to clearly indicate that the jury's verdict was based on prejudice, bias, sympathy, passion and other wrongful motives, and was not based upon the evidence, if any, and, therefore, a new trial should be granted for this reason." The 22nd point of error was germane to this assignment in the motion for new trial.

The Third point of error raised in appellants' new brief is a restatement of the 23rd point of error in appellants' original brief and complains that the trial court erred in refusing to order a remittitur. This point is germane to appellants' assignment of error no. 14 in its motion for new trial.

Special issue no. 6 reads:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate A. K. Meadows for the damages he suffered, if any, as the result of his being prosecuted for the offense of embezzlement?

"Consider the following elements of damage, if any, and none other:

"a) Expenses incurred or paid by A. K. Meadows in order to secure his release when arrested;

"b) Expenses incurred or paid by A. K. Meadows for attorney's fees in the defense of the criminal prosecutions of the offenses of embezzlement;

"c) Loss of earnings prior to the conclusion of the criminal prosecutions, as a direct result of his arrest and the prosecutions;

"d) Injuries to his feelings, name and reputation as a direct result of his arrest and prosecution.

"Give an answer for each element in dollars and cents, if any.

"Answer: a) $200.00    c) $500.00
          b) $5240.00  d) $20,000.00"

The jury failed to award Mr. Meadows any amount of money as exemplary damages.

Mr. Meadows testified that prior to the events leading to his indictment on a criminal offense, he had acquainted Mr. Green with the fact that he was of a "nervous disposition", he had received treatment for a nervous condition in the Veterans' Hospital, and he couldn't stand a whole lot of pressure. It is established that Meadows was arrested and detained and that it was necessary for him to post bond. He was indicted by a grand jury on a felony offense and was acquitted of the offense after a jury trial. Mr. Meadows testified that when he was arrested he was in a state of shock for several days and unable to work; that he couldn't sleep and couldn't concentrate. He was despondent and depressed and had to seek medical attention. He had to take medicine and generally was upset. He testified that he was shocked and frightened by the fact that he was charged with a felony offense. While he knew that he was not guilty, he had heard of cases where innocent people had gone to prison and this upset him. He testified that his health was affected and his nervous condition worsened as the result of the criminal prosecution. He testified that his wife had had several operations, she was nervous, and the criminal charges against him affected her emotionally. He noticed a difference in the way friends treated him. They seemed to be cold and distant, and he was embarrassed. He testified generally that he suffered great mental anguish. He testified that he lived in a small town, that many people were aware of the indictment, that he was injured socially, and that his feelings and reputation were injured.

There is little or no evidence as to the amount of publicity given to the indictment or subsequent trial of Mr. Meadows. His customs house broker's license was never suspended or revoked during the pendency of the indictments, and he continued to operate his customs house brokerage business. Subsequent to the indictment Mr. Meadows and several business associates formed a corporation to act as corporate customs house brokers and sought and secured approval of the District Director of Customs and United States Treasury Department to operate as a corporation in the Houston customs district. There is no testimony to support a conclusion that Mr. Meadows lost any potential customers or contracts by reason of the adverse publicity. There is no evidence that the adverse publicity received by Mr. Meadows and the consequent injury to his reputation adversely affected Mr. Meadows' financial position.

Where complaint is made that the amount of damage found by the jury is excessive this court is required to exercise its sound judicial judgment and discretion in the ascertainment of the amount that would be reasonable compensation for the

injuries sustained and to treat the balance as excess. In making this judgment we must determine whether the verdict is supported by a preponderance of the credible evidence. *Wilson v. Freeman*, 108 Tex. 121, 185 S.W. 993 (1916); *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835 (1959). In reaching their verdict in the amount of $20,000.00 the jury was restricted by the instructions of the trial court to a consideration of the injuries to Mr. Meadows' feelings, name and reputation. These are proper elements of damage. *Davis v. Teague*, 256 S.W. 957 (Tex.Civ.App.—Beaumont, 1923, writ dism'd); *Stein v. Greenebaum*, 203 S.W. 809 (Tex.Civ.App.—Galveston, 1918, no writ hist.).

The fact that the grand jury returned an indictment against Mr. Meadows and that he was arrested would support an inference that Mr. Meadows' reputation was injured in some degree. The only other evidence relating to an injury to Mr. Meadows' reputation and to his feelings is the testimony of Mr. Meadows. This testimony is sufficient to support an award in a substantial sum if under the facts in this case Mr. Meadows is a credible witness.

In our original opinion in this case we stated that Mr. Meadows' credibility was seriously impeached by statements which he made in his income tax return, in his application for a customs broker's license, and in an assumed name certificate. These statements related to his testimony that he occupied the position of a partner with Green rather than that of an employee. We concluded that in view of this evidence his testimony alone did not establish the fact of partnership by clear and satisfactory evidence. We are not required to weigh the evidence supporting the damage issues by the clear and convincing evidence standard.

The jury determined that $20,000.00 would fairly and reasonably compensate Mr. Meadows for the injuries he suffered to his feelings, name and reputation. This finding is supported by a preponderance of the credible evidence. Mr. Meadows' testimony supports the conclusion that he suffered severe mental pain and anguish which we equate with "injury to his feelings." There are no objective guidelines by which we can measure the money equivalent of mental pain. Much discretion must be allowed the jury in fixing this amount. The trial judge refused to order a remittitur. We are unable to say that the jury's verdict is excessive to the extent that the judgment should be reversed for that reason only. *S. S. Kresge Co. v. Prescott*, 435 S.W.2d 203 (Tex.Civ.App.—Texarkana, 1968, writ ref'd n. r. e.).

Judgment affirmed.