**BRAZORIA COUNTY, Appellant,**

v.

**Kathy DAVENPORT, Appellee.**

**No. 01–88–00734–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 5, 1989.

Rehearing Denied Nov. 16, 1989.

Jim Mapel, Criminal Dist. Atty., Jo Wiginton, Asst. Dist. Atty., Angleton, for appellant.

Robert T. Rice, Angleton, for appellee.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

## OPINION

EVANS, Chief Justice.

Brazoria County ("the County") appeals from a final judgment in favor of Kathy Davenport in a personal injury action brought under the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. sec. 101.-001 et seq. (Vernon 1986).

The undisputed facts show that in December 1984, Mrs. Davenport, who was approximately seven months pregnant, slipped and fell on a County-owned sidewalk outside a prenatal clinic on County premises. There was evidence that the slippery condition of the sidewalk resulted from an accumulation of water, mud, and slime on the sidewalk, which was caused by a leak from a rusted water line, and that the County had been aware of this dangerous condition for some time.

Under the Texas Tort Claims Act, sec. 101.022, when a claim is based on a "premises defect," a governmental unit is liable for ordinary negligence only if the plaintiff has paid for the use of the premises. In this case, the jury found that Mrs. Davenport had not paid for the use of the prenatal clinic, and because of that finding, the jury did not answer the ordinary negligence issues. Accordingly, this appeal relates only to the jury's findings on gross negligence.

The jury found that the County's conduct was grossly negligent in the following ways:

(1) In failing to eliminate the slippery condition;

(2) In failing to provide barricades to prevent traversing the slippery condition;

(3) In failing to conduct periodic maintenance inspections on the water line in question; and

(4) In failing to warn Mrs. Davenport of the slippery condition.

The jury also found that these acts and omissions were a proximate cause of the accident, and that the substance on the county sidewalk created a dangerous condition, i.e., one presenting an unreasonable risk of harm.

The jury further found that the County had actual knowledge of the dangerous condition. But the jury failed to find that Mrs. Davenport lacked actual knowledge of the peril.

In response to the damage issues, the jury awarded $15,000 for past physical pain

and mental anguish, $4,500 for loss of past earnings, and $1,000 for past medical care. The jury awarded nothing for future physical pain and mental anguish, for past or future physical impairment, for future loss of earning capacity, or for future medical care. The court entered judgment on the jury's verdict, and the County brings this appeal.

In its first three points of error, the County contends only that there was no evidence to support the jury's findings of gross negligence.

In reviewing these no evidence points, we have considered only the evidence and inferences therefrom that tend to support the jury's verdict and have disregarded all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). However, in reviewing the record to determine whether there is some evidence to support the jury's finding of gross negligence, we have considered all of the surrounding facts, circumstances, and conditions, not just individual elements or facts. *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex. 1981).

Gross negligence has been defined as "that entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the rights or welfare of the persons affected by it." *Missouri Pac. Ry. v. Shuford,* 72 Tex. 165, 170, 10 S.W. 408, 411 (1888); *see Burk Royalty Co.,* 616 S.W.2d at 920.

■ In order to support a finding of gross negligence, there must be some showing that the defendant knew about the dangerous condition, but was consciously, i.e., knowingly, indifferent to the rights, welfare, or safety of persons affected by it. Thus, ordinary negligence becomes gross negligence only when a defendant's acts or omissions show that he knew of the danger and did not care enough to remedy it. *Burk Royalty Co.,* 616 S.W.2d at 922. Because a defendant's mental state may be inferred from a combination of facts and circumstances, a finding of gross negligence need not rest on a single act or omission. All surrounding facts and circumstances that bear on the defendant's state of mind must be examined to determine whether there is legally sufficient evidence to support a finding of conscious indifference. *Id.* In making that decision here, we consider all evidence in the light most favorable to the jury's findings. *Id.*

■ The evidence shows that Mrs. Davenport, along with approximately 20 other pregnant women who were patients at the prenatal clinic, was following a nurse to a side entrance of the clinic. The women, who were being led by the nurse, were walking in a double line down the sidewalk when the accident occurred. Although the sidewalk was about 10 feet wide, a trash can obstructed a portion of the sidewalk, leaving only some 2½ feet of unobstructed walkway between the wall and a pool of accumulated water that encroached upon the sidewalk. According to Mrs. Davenport, this left barely enough room for two persons to walk abreast. As Mrs. Davenport tried to avoid stepping into the pool of water, she slipped on some "slime and mud" that had formed at the edge of the water on the sidewalk.

The pool of water on and adjacent to the sidewalk was a result of water leaking from a badly rusted water line. The County's building superintendent admitted that he knew of the rusted pipe and of the standing water. He also knew it encroached on the sidewalk in front of the prenatal clinic, where numerous pregnant women visited on a regular basis. He said the County, on five separate occasions, had temporarily patched individual leaks in the pipe, but water continued to leak from the pipe and to stand on the grass and sidewalk. He admitted that the only proper way to remedy the condition was to replace the rusted metal pipe with plastic PVC pipe. He said the County had been aware that the rusted metal pipe needed replacement and had planned to do so. As early as 1983, when he first began working for the County, PVC pipe had been obtained to replace the rusted pipe. But, before Mrs. Davenport's accident, the County had made no effort to replace the rusted pipe.

The record contains no evidence showing that the County ever erected any warning signs or barricades to prevent injury from the dangerous condition. Neither is there any showing that the County made regular inspections of the area in an effort to remedy the problem. Indeed, the superintendent explained there was no reason to try to "mop up" or to clean up the standing water, because there was just too much of it. As the superintendent admitted, the County's solution was simply to let the water evaporate.

There was also testimony that clinic employees had reported the problem to the maintenance department on at least two prior occasions. In essence, the evidence reflects that the County was aware of the problem and did nothing to correct it until after Mrs. Davenport's accident.

The County argues that there is no evidence of gross negligence because there is no evidence that "those who were responsible for the safety and maintenance of county premises knew or should have known that large numbers of pregnant women would be passing through the narrow area between the trash can and the water on the edge of the walk." Likewise, the County argues, there is no evidence "that the county had failed to repair leaks to the water line when notified, or that the maintenance department did not give priority to premises repairs in areas used by the public."

We overrule these contentions. The finding of conscious indifference does not depend upon proof showing that the County knew that persons customarily used that portion of the sidewalk where Mrs. Davenport fell. The issue is whether the County had knowledge of the existence of the dangerous condition, under such circumstances and for such length of time, that its conscious indifference for the safety of others could reasonably be inferred. We find there is some evidence, albeit circumstantial, from which the jury could reasonably have found that the County, though aware of the danger, consciously decided not to initiate the work to replace the rusted metal pipe.

A "gross negligence" case with similar facts is *Winn–Dixie Texas, Inc. v. Buck,* 719 S.W.2d 251 (Tex.App.—Fort Worth 1986, no writ). There, the manager and employees of a grocery store were aware of a water leak in front of the counters where produce was sold, but failed to either repair the leak or prevent customers from walking through it. The evidence showed that no effort had been made to block off the area, to put up a sign, or to take any action to prevent persons from walking in the area of water accumulation. This evidence, the court found, was sufficient for the jury to reasonably conclude that the store's employees simply did not care whether anyone slipped on the floor or not. *Id.* at 254.

Here, the evidence is undisputed that Mrs. Davenport's fall was caused by the slippery condition of the sidewalk leading to the prenatal clinic. It is also undisputed that this condition was the result of the continuing accumulation of water on the sidewalk and adjacent land, which resulted from a leaky, rusted water line. There was further evidence that the County knew of the dangerous condition at least six months before the accident, and that it had made no effort to remedy the danger or warn of its existence. Viewing the evidence in the light most favorable to the jury's findings, we conclude there is "some evidence" that the County's neglect indicated its conscious indifference to the safety of persons making lawful use of its premises. We therefore overrule the County's first three points of error.

■ In points of error four, five, and six, the County contends that the evidence was insufficient to support the jury's award of $15,000 for past pain and suffering, or alternatively, that the jury's award was against the great weight and preponderance of the evidence.

Mrs. Davenport, who was seven months pregnant at the time of the accident, testified that immediately after her fall she began having premature labor contractions. The nurses at the prenatal clinic instructed her to go directly to the hospital. She was admitted to John Sealy Hospital,

and stayed there for 16 hours until her contractions ceased. She was directed to remain in bed for a period of three weeks. Mrs. Davenport subsequently delivered a healthy child, and withdrew her claim for any damages on behalf of her child.

Mrs. Davenport testified that she injured her lower back, hips, and neck when she fell on the concrete. She testified that she felt pain and numbness immediately following the fall, and that by the next day, she had difficulty walking, her neck was stiff, and her arms were sore. After her three weeks of prescribed bed rest, Mrs. Davenport visited an orthopedic surgeon. The doctor examined her, but was unable to x-ray her because of her pregnancy. From his physical examination, the doctor confirmed that she had strained her lower back. The doctor testified that Mrs. Davenport was in pain when he saw her, and that there was a reasonable medical probability that the lumbar sprain could cause problems and pain in the future. He did not believe that surgery was indicated in her case. He was not able to prescribe any pain medication due to her pregnancy, but recommended that she use a heat pack and hydroculator, and take aspirin for the pain.

Mrs. Davenport testified that, following the accident, she was unable to perform her normal household duties or care for her children. She testified that she experienced vision problems, and that she could not bend over or turn her head from side to side. Following the birth of her baby, she said that she was unable to lift the baby, and had to have help with the housework for approximately eight weeks.

During this period of time, Mrs. Davenport testified that she was using the heat pack and taking aspirin for pain, as the doctor had recommended. After the baby was born in February 1985, she testified that she did not return to the orthopedic surgeon to ask for prescription pain medication because she was nursing her baby.

From November 1985 until April 1986, Mrs. Davenport was treated by a chiropractor, Dr. Robert Hurst, for pain in her neck, back, and hip. He testified that Mrs. Davenport experienced sciatic pain in her back, and pain from her right leg to her ankle. He took x-rays and observed muscle spasms, and diagnosed her as having a "hot" sciatic nerve, or pinched nerve. Dr. Hurst released Mrs. Davenport to light duty in March 1986, and to full duty in April 1986.

The jury awarded Mrs. Davenport $15,000 for past physical pain and mental anguish. The jury awarded no damages for past or future physical impairment, and no damages for future physical pain and mental anguish.

Considerable latitude is vested in the jury in assessing damages for personal injuries, and each case must be measured by its own facts. *Herrin Transp. Co. v. Peterson,* 216 S.W.2d 245, 249 (Tex.Civ. App.—Galveston 1948, writ ref'd n.r.e.). Unless the jury's award is obviously excessive, or it is shown by positive testimony that the jury was influenced by passion or prejudice, the appellate court will not disturb the jury verdict and assessment of damages. *Nussbaum v. Anthony,* 214 S.W.2d 686, 690 (Tex.Civ.App.—Amarillo 1948, writ ref'd n.r.e.). In this case, there was testimony, both from Mrs. Davenport herself and from her treating physicians, regarding her injuries. Both physicians corroborated her testimony that she was in pain due to her injuries. Moreover, in assessing damages, the jury could have taken into account Mrs. Davenport's mental anguish in connection with her pregnancy, and her fear that her baby might be born prematurely or might otherwise be injured as a result of her fall. There are no objective guidelines by which the court may measure the money equivalent of mental anguish, and the jury is allowed a great deal of discretion in fixing this amount. *Green v. Meadows,* 527 S.W.2d 496, 499 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). In this case, the jury's award of $15,000 was not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Pope v. Moore,* 711 S.W.2d 622, 624 (Tex. 1986).

The County's fourth, fifth, and sixth points of error are overruled.

In points of error seven through ten, the County argues that there was insufficient evidence to support the jury's finding of lost earnings and lost earning capacity in the past.

Mrs. Davenport testified that, prior to the accident, she had earned between $4.00 and $10.00 per hour in various jobs. She worked for the Texas Highway Department in Alvin and Houston for two years, driving dump trucks and doing road repairs, and was paid $4.72 per hour. She testified that she drove a truck for Brown & Root in Texas City for several months, and was paid $9.20 per hour for that work. She testified that she sought employment after the accident but was unable to find a job because of her physical limitations. She said that she was unable to work because of her injuries from the time of the accident in December 1984 until April 1986, when Dr. Hurst released her for full duty.

A recovery of damages for loss of earning capacity is not recovery of actual earnings, but is recovery for the loss of capacity to earn money. *Armellini Express Lines of Florida, Inc. v. Ansley,* 605 S.W.2d 297, 312 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). It is the loss of earning capacity, rather than loss of earnings resulting from the injury, that is the determining factor. *City of Houston v. Holden,* 336 S.W.2d 193, 196 (Tex.Civ. App.—Eastland 1960, writ ref'd n.r.e.). In this case, the record reflects that Mrs. Davenport was released by her physician for full duty 15 months after her accident. Even if she had been unable to work for part of that time due to her pregnancy and the birth of her baby, there remains approximately 12 months that she could have been employed. Moreover, if she had been paid $5.00 per hour for a 40-hour week, she would have earned approximately $10,000 for a 12-month period. The jury awarded her $4,500. In light of her previous work record prior to the accident, the jury's award of $4,500 for lost wages was not unreasonable.

The County's seventh, eighth, ninth, and tenth points of error are overruled.

The judgment of the trial court is affirmed.

DUGGAN, J., dissents.

DUGGAN, Justice, dissenting.

I respectfully dissent.

I agree with the majority that the evidence supports a finding of negligence by Brazoria County in allowing water to stand on a sidewalk, as occurred here. However, I would hold as a matter of law that there was no evidence to show one indispensable element of gross negligence, viz., the County's conscious indifference to Mrs. Davenport's safety and welfare. I believe the record fails to show "that defendant knew about plaintiff's peril, but didn't care." *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex.1981).

The majority states that the required finding of conscious indifference does not depend upon a showing that the County knew that persons customarily used the portion of the walkway where Mrs. Davenport fell. Instead, the majority reasons, the necessary conscious indifference turns on whether the County knew of the existence of the dangerous condition *"under such circumstances* and for such length of time that its conscious indifference for the safety of others could reasonably be inferred."* (Emphasis added.)

If "such circumstances" did not require the County's knowledge of a customary use of the portion of the sidewalk in question, I would hold that those circumstances at least required, before conscious indifference could be inferred, proof that: (1) the portion of the sidewalk in question had in fact been used previously as a route to the clinic's entrance; and (2) the County knew it. Both of these elements are lacking.

The evidence shows undisputedly that all of the County's public clinics were customarily entered from outside the building through door eight. In all of the 20 previous times that Mrs. Davenport had come to the prenatal clinic, door nine had never been used as the public entrance to either the prenatal or the family planning clinic. There was no evidence that door nine had

ever been used before the date of her fall as a public entrance to the clinics. The novelty of the use of door nine as an entrance is underscored by the fact that clinic authorities had a nurse lead the patients from door eight, rather than simply directing them to use the side entrance through door nine.

The majority cites *Winn–Dixie Texas, Inc. v. Buck*, 719 S.W.2d 251 (Tex.App.—Fort Worth 1986, no writ), as similar and precedential. I find it to be readily distinguishable from the fact situation of our case. In *Winn–Dixie*, the defendant grocery store's manager and employees were aware of, and failed to repair, a water leak situated in front of produce counters where produce was sold to the public, and where store personnel knew the public regularly passed by. The defendant retailer's awareness of the hazardous condition, situated in an area known and intended to be used by the public, showed the grossly negligent mind set in *Winn–Dixie*. By contrast, there is a total lack of evidence in our case to show that the County was aware that the hitherto unused side entrance route was a peril to Mrs. Davenport or others, and did not care.

I would hold that the trial court erred in overruling the County's motion for instructed verdict and judgment n.o.v., and would reverse and render a judgment of dismissal for Brazoria County.