**WAL–MART STORES, INC., Appellant,**

v.

**Maria V. CORDOVA, Appellee.**

**No. 08–91–00099–CV.**

Court of Appeals of Texas,
El Paso.

May 12, 1993.

Rehearing Overruled July 23, 1993.

Alan N. Magenheim, Tina Snelling, J. Preston Wrotenberry, Hirsch, Glover, Robinson & Sheiness, Houston, for appellant.

Wayne E. Windle, Dudley, Dudley & Windle, El Paso, for appellee.

Before KOEHLER, BARAJAS and LARRY FULLER (Retired, Sitting by Assignment), JJ.

## OPINION

FULLER, Justice (Ret.).

This Court's original opinion and judgment dated July 8, 1992 were withdrawn on October 26, 1992 and both Appellant's and Appellee's motions for rehearing granted.

Additional briefs were filed and oral arguments heard.

Wal–Mart appeals from an adverse jury damage award judgment resulting from a "slip but no fall" accident incurred by a customer while shopping in a Wal–Mart store. We reverse and render in part and remand in part.

## FACTS

Maria Cordova entered a Wal–Mart store in September 1984 to do some shopping. She was accompanied by her husband who was pushing a shopping cart. She slipped and grabbed onto the shopping cart which resulted in her experiencing immediate pain.

Before the accident, a Wal–Mart employee had discovered that someone had spilled a soda drink on the floor of one of the shopping aisles. A Wal–Mart employee cleaned up the spill but apparently failed to completely dry the spot. Shortly thereafter, Mrs. Cordova slipped on the damp floor. Appellant contended that orange cones had been placed on the floor to alert shoppers. Evidence was in conflict as to whether there were orange cones on the floor to warn customers but it was undisputed that Mrs. Cordova never saw them.

The trial court submitted the case to the jury on the pled causes of action of negligence and gross negligence. The jury returned its verdict awarding actual damages in the amount of $392,000. The jury awarded $250,000 in exemplary damages. Judgment was entered representing the total jury award of $642,000 plus interest in the amount of $112,000. The Appellant has duly perfected its appeal from the $722,248 judgment entered by the trial court.

## POINTS OF ERROR

Wal–Mart asserts in Points of Error Nos. Three, Four, Five and Six that the evidence is legally and factually insufficient to support the jury's finding of negligence, gross negligence and loss of earning capacity.

Points of Error Nos. One, Two and Seven complain as to matters concerning the conduct of the trial.

Considering the "no evidence" challenge, we must consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury's verdict. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford*, 726 S.W.2d 14 (Tex.1987). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16.

On the other hand, when a factual sufficiency challenge is brought, this Court must first examine all of the evidence and after considering and weighing all of the evidence, this Court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Lofton v. Texas Brine Corporation*, 720 S.W.2d 804, 805 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since this Court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ In Point of Error No. Three, Wal–Mart argues that the evidence is legally and factually insufficient to support damages for loss of earning capacity.

■ At the outset, recovery for loss of earning capacity is not recovery of actual earnings but rather is recovery for the loss of capacity to earn money. *Armellini Express Lines of Florida, Inc. v. Ansley*, 605 S.W.2d 297, 312 (Tex.App.—Corpus Christi 1980, writ ref'd n.r.e.). As a result, recovery for loss of earning capacity does not require an injured party to have been working at the time of the injury. The injured party, however, is required to introduce sufficient evidence which enables the jury to reasonably measure earning capacity

prior to the injury. *City of Houston v. Howard*, 786 S.W.2d 391 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Consequently, it is incumbent on a plaintiff who seeks damages for loss of earning capacity to introduce some monetary measure of earning capacity or, in the alternative, have some reason for failing to do so.

The amount of damages resulting from the impairment of a plaintiff's earning capacity must be left largely to the sound judgment and discretion of the jury. Even though the jury is given such discretionary power, the jury should not be left to mere conjecture where facts appear to be available upon which the jury could base an intelligent answer. *Bonney v. San Antonio Transit Company*, 160 Tex. 11, 325 S.W.2d 117, 121 (1959); *Ansley*, 605 S.W.2d at 312–13.

Evidence that supports the jury's finding reveals Cordova had an irregular work history prior to her accident. Despite this "irregular" work history, an economist testified as to Cordova's earning capacity prior to the injury, specifically basing such capacity on Cordova's age, work history and minimum wage salary. The economist additionally testified as to Cordova's capacity to earn money in the future, based on her degree of impairment and a minimum wage salary. These facts, when viewed in the light most favorable to the verdict, constitute more than a scintilla of evidence to support an award for loss of earning capacity.

■ A review of the record as a whole discloses that Cordova was not working at the time of the accident. In fact, Cordova was not gainfully employed during the year in which the accident occurred. However, in 1983, the year before the accident, Cordova was employed as a cook. Cordova testified that she quit her job as a cook due to medical problems. Another factor that influenced Cordova's decision to quit work was her desire to stay at home in order to care for her son.[1] Prior to her position as

1. Wal–Mart has advanced as a basis for denying loss of earning capacity, the fact that Cordova was not a citizen of the United States. Wal-

Mart further asserts that there is no evidence that Cordova possessed employment authorization in order to legally work in the United

a cook, Cordova worked as a factory worker and in janitorial services. The existence of such evidence clearly provided the jury with sufficient facts upon which they could base an intelligent answer regarding Cordova's loss of earning capacity.

While some of the evidence regarding loss of earning capacity may have been in conflict and would have been sufficient to support a contrary finding, there does exist some probative evidence, as well as reasonable inferences therefrom, that would support the jury's finding as to Cordova's loss of earning capacity. Thus, we are of the opinion that there is evidence from which the jury could reasonably conclude that Cordova would be incapable of returning to productive work. Additionally, the jury's award is not manifestly wrong and unjust, nor does it offend the conscience of this Court. Wal–Mart's third point of error is overruled.

In Wal–Mart's second point of error, Wal–Mart complains of the admission of evidence relating to Cordova's loss of earning capacity. Specifically, Wal–Mart argues that the trial court erred in permitting Cordova to introduce evidence of loss of earning capacity because Cordova failed to include loss of earning capacity in her answers to two interrogatories propounded by Wal–Mart.

In Wal–Mart's interrogatory number six, Wal–Mart inquired as follows: "If you are claiming loss of earnings in this case, please state the amount of loss of earnings you are claiming." In response to Wal–Mart's interrogatory number six, Cordova stated: "None."

As noted earlier, a recovery of damages for loss of earning capacity is not recovery of actual earnings but is recovery for the loss of capacity to earn money. *Brazoria County v. Davenport,* 780 S.W.2d 827 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Ansley,* 605 S.W.2d at 297, 312. Since Wal–Mart's interrogatory number six only inquired as to Cordova's claims for **loss of earnings,** Cordova's response can-

not constitute a bar for **loss of earning capacity.** Cordova did not request, nor did she receive compensation for loss of earnings as a result of any injuries which she may have sustained in the instant case.

■ In Wal–Mart's interrogatory number thirteen, Wal–Mart inquired as follows: "What are the special damages which you claim to have incurred as a result of the accident made the subject matter of this suit, and attach to your answers an exact copy of each bill covering said expense." By posing the interrogatory in the above manner, Wal–Mart failed to clearly inquire as to any claim for loss of earning capacity. Instead, Wal–Mart specifically requested that Cordova attach an exact copy of each bill covering each of the expenses listed. Such a request is tantamount to a request for "liquidated special damages." Loss of earning capacity, however, is not the type of damage which would be subject to the submission of a "bill" prior to trial because such damages to be incurred in the future are by definition uncertain.

Cordova, in responding to interrogatory number thirteen, listed its "liquidated special damages" by detailing a list of all medical providers. Such a response sufficiently answered the interrogatory posed by Wal–Mart.

The task of an appellate court in reviewing the trial court's exercise of discretion to grant or deny relief pursuant to rules of discovery, is to make an independent inquiry to determine whether the trial court's order is so arbitrary, unreasonable or based upon so gross and prejudicial an error of law as to clearly establish abuse of discretion. *Shell Oil Company v. Smith,* 814 S.W.2d 237 (Tex.App.—Houston [14th Dist] 1991, orig. proceeding [leave denied] ). In light of the above, we find the trial court did not abuse its discretion in admitting evidence on the issue of Cordova's loss of earning capacity. Point of Error No. Two is overruled.

States. The current state of Texas law does not require citizenship or the possession of immigration work authorization permits as a prereq-

uisite to recovering damages for loss of earning capacity, nor will this Court espouse such a theory.

In Point of Error No. Seven, Wal–Mart contends the trial court erred in allowing Cordova to re-open her case and introduce into evidence Wal–Mart's response to a request for production. Specifically, Wal–Mart complains of the following evidence that was read to the jury by Cordova's attorney:

I'm reading from a response to a request for production that was filed by Wal–Mart. Comes now, the Defendant, Wal–Mart Corporation, and files the supplemental responses to request for production propounded by the plaintiffs and for answer would show the Court as follows:

Number two. [Plaintiff's] request was for a complete copy of the safety manual issued to the store. Response. The store did not have a safety manual at the time of the incident in question to our knowledge.

In the trial court, Wal–Mart preserved error by generally objecting to the admission of this evidence on the grounds that (1) the response did not rebut any previously introduced evidence; and (2) it is improper to introduce a response to a request for production.

Pursuant to the Texas Rules of Civil Procedure, a trial court may permit additional evidence to be offered at **any time** if the admission of such evidence appears to be necessary to the due administration of justice. TEX.R.CIV.P. 270. In accordance with this rule, it was within the discretion of the trial court to allow Cordova to re-open her case. See *Word of Faith World Outreach Center Church, Inc. v. Oechsner*, 669 S.W.2d 364 (Tex.App.—Dallas 1984, no writ). Thus, the dispositive question on review is whether the trial court, in exercising this discretion, acted arbitrarily or without reference to any "guiding rules or principles." *Babcock v. Northwest Memorial Hospital*, 767 S.W.2d 705 (Tex. 1989).

The Texas Rules of Civil Procedure allow certain forms of discovery to be admitted as evidence during trial. Specifically, the rules of discovery allow depositions, requests for admissions and answers to interrogatories to be admitted into evidence.

See TEX.R.CIV.P. 168, 169, 187 and 207; see also *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex.1989); *Cornell v. Cornell*, 570 S.W.2d 22, 23 (Tex.Civ.App.—San Antonio 1978, no writ). However, the rules of discovery are silent as to the admissibility of requests for production. As a consequence, there is no specific rule of admissibility regarding negative responses to requests for production.

As in the case of other forms of discovery, a request for production can elicit different replies. For instance, a party receiving the request can (1) produce the requested documents; (2) object to the request; or (3) deny the existence of the requested documents. When a party produces the requested documents, such documents are admissible in evidence subject only to the rules of evidence. *General Motors Corporation v. Ramsey*, 633 S.W.2d 646, 649 (Tex.App.—Waco 1982, writ dism'd) (opinion on rehearing). The question we are faced with is whether Wal–Mart's denial of the existence of a document is governed by the same rule of admissibility as in the case of a produced document.

Generally speaking, the rules of evidence are controlling in regard to questions of admissibility if no other statute or rule speaks to the issue. As a consequence, a response to a request for production should be treated in the same manner as documents produced in response to the request. In other words, Wal–Mart's response to the request for production is admissible as long as it did not violate the general rules of evidence.

Based on the above facts, we cannot say the trial court acted without reference to any guiding rules or principles. Accordingly, admission of Wal–Mart's response to the request for production in rebuttal did not constitute an abuse of discretion. Point of Error No. Seven is overruled.

This Court is particularly concerned and disturbed by Point of Error No. One which asserts:

THE TRIAL COURT ERRED IN ALLOWING TESTIMONY OF THE NET WORTH OF WAL–MART PRIOR TO MARIA CORDOVA ESTABLISHING A

PRIMA FACIE CASE OF GROSS NEGLIGENCE.

Before trial, Wal–Mart filed a Motion in Limine requesting that there should be no reference, comment, evidence or testimony relating to the net worth of Wal–Mart or the fact that Wal–Mart was one of the wealthiest companies in the United States.

On the morning the trial was to begin but before voir dire of the jury, the trial judge heard Motions in Limine of the Appellee and Appellant. Wal–Mart urged that:

[U]ntil the court rules on gross negligence and whether a prima facie case has been proved, we would ask that the financial net worth of our client not be mentioned....

The trial court stated:

Well, I'm going to grant it at this time and if there is [sic] facts sufficient to prove gross negligence or exemplary damages, then at that point of time, approach the bench and—.

The selection of the jury was made the same day with evidence commencing the following day. Maria Cordova was the first witness and while still on direct examination, her attorney announced that he wished to call his expert witness out of turn because the expert was to leave town to testify at another trial. Appellant objected specifically to any testimony of the net worth as to Wal–Mart because Appellee had not shown a *prima facie* case of gross negligence. He reminded the trial court of the granting of the Motion in Limine prohibiting such testimony.

■ The trial court's decision to allow Maria Cordova's expert to testify out of order is ordinarily a discretionary matter. Tex.R.Civ.Evid. 611(a). Such a decision will not be reversed unless there is a clear showing of abuse of discretion. An abuse of discretion exists if the trial court acted without reference to any guiding rules and principles or if the act complained of was arbitrary or unreasonable. *Babcock,* 767 S.W.2d at 705, 709.

Appellee's attorney admitted lack of proof of a *prima facie* case of gross negli-gence by telling the court. **"We're going to prove all of this up. All of this objection is moot because we're going to meet our burden on that."**

The testimony of the expert was permitted. It was heard by the jury so early in the trial that it had to be devastating as well as prejudicial. The expert testified that as of January 1990, Wal–Mart had current assets of $4.7 billion; a cash flow of $1.3 billion; a net worth of close to $4 billion. All this evidence was received before Maria Cordova had completed her direct testimony.

We believe that the trial judge was led into error by the representation of Appellee's counsel that he would prove up a *prima facie* case of gross negligence.

The trial court instructed the jury in the court's charge that:

Gross negligence means more than monetary thoughtlessness, inadvertence, or error in judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual or conscious indifference to the rights, welfare or safety of the person affected by it.

Our Texas Supreme Court has stated that a defendant is liable for gross negligence only if the defendant had knowledge of the plaintiff's peril and his "acts or omissions demonstrated that he did not care." *Burk Royalty Company v. Walls,* 616 S.W.2d 911, 922 (Tex.1981).

■ WAS WAL–MART "CONSCIOUSLY INDIFFERENT" TO THE SAFETY AND WELFARE OF MARIA CORDOVA? *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570 (Tex.1985); *Manriquez v. Mid-Century Insurance Company,* 779 S.W.2d 482, 484 (Tex.App.—El Paso 1989, writ denied).

On review of the evidence, we find that Wal–Mart was not consciously indifferent to the safety of Maria Cordova. In fact, Wal–Mart's actions demonstrate that it cared about its customers and the condition of the floor. The soda spill did not occur in a drink product aisle. When the soda spill was discovered, it was immediately cleaned

up. There was testimony that warning cones were placed at the area of the spill though not seen by Maria Cordova. The Wal–Mart employee, Ernest Garcia, assisted Mrs. Cordova to a more comfortable location. He returned to the accident aisle to make sure the damp spot was dry before removing the orange warning cones.

We find that the trial court erred in admitting the testimony of the expert as to the net worth of Wal–Mart without first determining that a *prima facie* case of gross negligence had been established by the evidence.

While we are aware the trial court may have relied on the assurance of counsel that he would prove a *prima facie* case, we are of the opinion that this was not done by counsel.

We further find that after review of the entire evidence in the record, there was no evidence to support the submission of Appellee's claim of gross negligence to the jury.

Therefore, the testimony of the expert in regard to net worth was not relevant and was admitted into evidence in error. TEX. R.CIV.EVID. 104(b).

We sustain Point of Error No. One in that the trial court erred in allowing the testimony of net worth before a *prima facie* case of gross negligence was established.

■■■■ The next serious problem facing this Court is whether the improper admission of the net worth testimony tainted the actual damages awarded for the negligence cause of action. Appellee should be held partly responsible for the error of the trial court. Her counsel assured the court that if the witness was allowed to testify, gross negligence would be proven up. This representation in our opinion was not fulfilled.

We sustain Wal–Mart's points of error complaining that the trial court erred in the admission of net worth testimony; the error of the jury on awarding exemplary damages and the error of the trial court in entering judgment for exemplary damages.

We are of the opinion that the evidence was legally and factually sufficient to support the submission of the case to the jury on the negligence cause of action. However, we are of the opinion that the error committed by the admission of the net worth testimony amounted to such a denial of the rights of the Appellant to defend the negligence claim as to cause and probably did cause rendition of an improper judgment. TEX.R.APP.P. 81(b)(1).

In summary, we reverse and render judgment for Wal–Mart on Appellee's gross negligence cause of action and reverse and remand the negligence cause of action for another trial.

KOEHLER, Justice, concurring.

Although I concur in the majority opinion in both content and results, I would add a few comments with regard to Wal–Mart's Point of Error No. One, in which it asserts that the trial court erred by permitting Cordova, over Wal–Mart's timely objection, to introduce evidence of Wal–Mart's net worth prior to the establishment of a *prima facie* case of gross negligence. When to allow evidence of a defendant's net worth is a recurring problem. Although a potential prejudice-causing problem exists anytime a plaintiff is permitted over objection to introduce such evidence before there has been a jury finding of ordinary negligence, it is particularly vexing when a trial judge permits introduction of such evidence at an early stage of the trial before any gross negligence has been shown. At a point in the trial where Cordova herself was still testifying on direct examination, no *prima facie* showing of gross negligence having been made, the trial court allowed Cordova to interrupt her own testimony and to call an economist, Dr. Everett Dillman, to testify not only on Cordova's economic loss but also on Wal–Mart's net worth. In doing so, the trial judge reversed her previous order granting Wal–Mart's Motion in Limine by which she had properly prohibited the introduction of net worth evidence until after a *prima facie*

showing of gross negligence.[2]

The rules of evidence authorize a trial judge to exercise reasonable control over the mode and order of interrogating witnesses. TEX.R.CIV.EVID. 611. However, the rules do not give the trial judge unbridled discretion. See *Prezelski v. Christiansen*, 775 S.W.2d 764, 766 n. 2 (Tex. App.—San Antonio 1989), *rev'd on other grounds*, 782 S.W.2d 842 (Tex.1990). The court's discretion is certainly tempered by the provisions of Rule 403 which require evidence to be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." TEX. R.CIV.EVID. 403. If the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, that evidence should not come in, particularly before its probative value has been established, whether under the theory of conditional relevance authorized under TEX. R.CIV.EVID. 104(b), or under any other theory with which I am familiar.

The courts in this state have long recognized that the existence or nonexistence of wealth is irrelevant in determining a party's tort liability and evidence of a party's financial condition is generally regarded as an appeal to the prejudice or sympathy of the jury. *Wilmoth v. Limestone Products Co.*, 255 S.W.2d 532 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.). Moreover, it is reversible error to inject into the trial a party's financial condition. *Murphy v. Waldrip*, 692 S.W.2d 584, 588 (Tex.App.—Fort Worth 1985, no writ).

There is an obvious risk that evidence of a defendant's financial ability prior to evidence regarding liability may create a prejudice that could, in a close case, tilt the scales of justice against the defendant on the question of liability. Moreover, the jury may confuse the issues by prematurely considering evidence which goes only to the issue of exemplary damage calculations.[3] *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex.1988)

The timing of the introduction of net worth evidence has not been directly and definitively addressed by the Supreme Court. However, in *Nabours v. Longview Savings & Loan Ass'n*, 700 S.W.2d 901 (Tex.1985), Justice Gonzalez in his majority opinion was concerned with the necessity of proving actual damages before awarding punitive damages when he stated that "[p]unitive damages must be contingent on a finding of actual damage since actual damage is a necessary element of the underlying tort upon which the punitive damages are based."

In *Lunsford*, the Supreme Court was confronted with the question of pretrial discovery of net worth rather than the timing problem of when evidence of a defendant's net worth should be introduced in a jury trial. However, both the majority and the dissenting justices more than touched on the timing problem and how some states were attempting to resolve it. Justice Gonzalez, in his dissenting opinion, expressed great concern on the timing issue. He advocated adopting procedural guidelines in all cases where punitive damages may be awarded in order to preserve a prejudice-free atmosphere in which the defendant's conduct can be judged by his acts or omissions and not by his net worth. He sug-

**2.** The trial court did not find specifically that the evidence at that point (when she permitted the economist to testify of turn) established a *prima facie* case of gross evidence. In overruling Wal–Mart's objection, the court observed that, "Based on everything the jury has heard and seen in this courtroom already in this case, and even with some of the other rulings this Court has made, the Court is going to overrule your objections and allow Dr. Dillman to testify."

**3.** An analogy to current criminal practice illustrates the feasibility of controlling the timing of "limited use" evidence. During the guilt/innocence phase of a criminal trial, extraneous offenses or other bad acts are as a general rule excluded from the trial. The reasoning is that a jury could be prejudiced and convict the defendant merely based on his propensity as a criminal. However, the relevance and admissibility of these same bad acts is increased while assessing punishment. The same reasoning should apply, in the civil context, to the use of evidence concerning a defendant's net worth. To prevent a defendant from being held liable, simply because a "deep-pocket" exists, the court must regulate the timing and introduction of net worth evidence.

gested utilization of some form of bifurcated trial procedure to accomplish this end. 746 S.W.2d at 474–75. Justice Gonzalez recognized the inherent prejudicial effect of untimely disclosure of a defendant's net worth when he stated, "There is no legitimate need for a jury to be made aware of a defendant's net worth when determining these issues."

The *Lunsford* majority noted that some states, as of 1988, require a *prima facie* showing of entitlement to punitive damages before a defendant's net worth may be discovered.[4] 746 S.W.2d at 473. The so called "Wyoming" plan requires a plaintiff to make a *prima facie* showing that a viable cause exists for punitive damages before pretrial discovery is permitted. *Id.* at 475. I would, however, agree with Chief Justice Phillips' dissent in *Lunsford,* that a mandated bifurcation is not necessary in every case in which punitive damages are available.[5] *Id.* at 477. The trial court should require, at a minimum, a *prima facie* showing by the plaintiff of a cause in which punitive damages are available.

Through reasonable restraints on the order in which such evidence is introduced, a defendant would be better assured that his liability, if any, would be measured in an environment free of any prejudice that could accompany the premature disclosure of his net worth. The burden on the plaintiff resulting from such restraints would be, at worst, minimal. If, as with Dr. Dillman, a conflict arises hindering his in-court testimony, other means, including video depositions or stipulations, can be utilized to secure the necessary testimony. There is evidence that Wal–Mart offered several of these alternatives but that Cordova and her attorney insisted on live testimony. He could have easily been permitted to give live testimony to the jury of Cordova's economic loss and required to give punitive damages testimony in a deposition after the jury had been retired. The premature disclosure of Wal–Mart's net worth very likely created an atmosphere where Wal–Mart could not get a fair trial even on the question of ordinary negligence, let alone on the gross negligence issues.

---

**4.** See, e.g., *Curtis v. Partain,* 272 Ark. 400, 614 S.W.2d 671 (1981).

**5.** Chief Justice Phillips suggested the use of protective orders and jury instructions as a more reasonable means of protecting a defendant's legitimate interests against prejudice. *Lunsford,* 746 S.W.2d at 477.