

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00116-CV

L.H.                                                                          APPELLANT

V.

N.H.                                                                          APPELLEE

----------

## FROM THE 158TH DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. 2013-20350-158

----------

## MEMORANDUM OPINION[1]

----------

Appellant L.H. (Lacy)[2] appeals the trial court's final decree of divorce. In

two issues, she argues that the trial court erred by admitting and considering a

---

[1]*See* Tex. R. App. P. 47.4.

[2]To protect the anonymity of the parties and their children, we refer to the parties through aliases. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); *In re F.M.B.*, No. 02-12-00153-CV, 2014 WL 70108, at *1 n.2 (Tex. App.—Fort Worth Jan. 9, 2014, no pet.) (mem. op.).

social study that relied on illegally-obtained evidence and that the trial court abused its discretion by limiting her presentation of evidence at the final hearing that led to the decree. We affirm.

**Background Facts**

Lacy and appellee N.H. (Neil) married in March 2010 but stopped living together in April 2013. They have two children together.

In May 2013, Neil filed a petition for divorce. He asked the trial court to name him as the children's primary managing conservator if the parties could not otherwise agree to the children's conservatorship. He also asked the court to order the preparation of a social study concerning "the circumstances and conditions of the children and of the home of any person seeking managing conservatorship or possession of the children." The trial court eventually ordered the preparation of a social study by Rosemary Rodriguez; the court instructed Rodriguez to opine about the parties' conservatorship of and access to the children. Through counsel, Lacy filed an answer.

In July 2013, the trial court temporarily designated Neil and Lacy as the children's joint managing conservators. The court also temporarily gave Lacy the exclusive right to designate the children's primary residence, ordered specific times during which each party had the right to possess the children, and required Neil to pay monthly child support.

In December 2013, Neil filed a motion in which he asserted that on several occasions, Lacy had knowingly violated the trial court's possession order. He

asked the court to hold Lacy in contempt. The trial court eventually did so, finding that she had contemptuously disobeyed the possession order. The court ordered her to be confined for ninety days but suspended enforcement of the contempt order as long as she immediately began to comply with the possession order. On the same day that the trial court signed its contempt order, Lacy's attorney withdrew as her counsel.

The trial court held a final hearing on Neil's divorce petition in December 2014. Lacy appeared pro se and asked for a continuance, but the trial court denied that request. At the hearing, Rodriguez, who had completed the social study, recommended that Neil be named as the children's primary managing conservator with the right to establish their residence. She testified that she had "put a lot of weight" on recordings of telephone conversations between Lacy and a child[3] and that she had also reviewed Facebook posts and had observed other acts of Lacy toward the children. Rodriguez testified that she believed that Lacy was deceptive and was "doing a lot of parental alienation." Rodriguez explained that Lacy's "trying to color the children's perception of their father [was] not right," and she testified that Lacy's feelings toward Neil had prevented Lacy from properly focusing on the children's welfare.

On cross-examination by Lacy, Rodriguez conceded that while Lacy possessed the children, they were well-cared for and happy, and Rodriguez

---

[3]Rodriguez described Lacy's language on the recordings as vile, vindictive, and disturbing.

testified that when she observed Lacy with the children, Lacy spoke to them appropriately. Rodriguez also testified that she had told Lacy to stop making harassing phone calls. Rodriguez explained during Lacy's cross-examination, "Judge, let me say this so that [Lacy] can hear it again, and I said it in my report. [Neil] was okay with [Lacy] being the primary parent. . . . But she, by her actions, convinced me that it had to be the other way around."

During Neil's testimony, the trial court admitted his financial inventory and appraisement. The court also admitted Neil's property-division proposal. Lacy asked Neil several questions, including questions about his alleged physical abuse of her. Lacy also testified.

At the conclusion of the evidence, the trial court ordered that the parties would be joint managing conservators of the children, that Neil would have the exclusive right to establish their residence, that Lacy would pay child support, that she would have standard visitation rights, and that the parties' property would be divided in accordance with Neil's proposal. The court expressed that it had given "significant weight to the social study, the demeanor of the witnesses to the testimony, and in some cases the inconsistency of the testimony" in making these rulings. Approximately one month later, the trial court signed a final decree of divorce that incorporated the court's oral rulings.

With the assistance of counsel, Lacy filed a motion for new trial. In the motion, she argued for the first time that the trial court should not have considered the social study because it contained illegally-obtained evidence. The

4

trial court did not expressly rule on the motion, so it was overruled by operation of law.[4]  Lacy brought this appeal.

## Allegedly Illegal Recordings

In her first issue, Lacy contends that the trial court erred by admitting and considering Rodriguez's social study.  She argues that the social study was inadmissible because it was based, in part, on Neil's recordings of her phone conversations, which she claims were illegal under state and federal law.[5]  She also argues that the social study was inadmissible because Rodriguez did not comply with certain requirements under the family code.

Lacy did not, however, raise any of these arguments at the time of the social study's admission or before the trial court considered it in reaching a decision.  Instead, when Neil sought admission of the report from Rodriguez's social study, the following exchange occurred:

> [NEIL'S COUNSEL:]  And this contains . . . a summary of all of your contacts in the case and your findings in the case and --
>
> [RODRIGUEZ:]  My conclusions, my recommendations, yes.
>
> . . . .
>
> [NEIL'S COUNSEL]:   We'd offer Petitioner's No. 2, Your Honor.

---

[4]*See* Tex. R. Civ. P. 329b(c).

[5]More specifically, Lacy argues that Neil's counsel should have known that the recordings were illegally obtained, that Rodriguez should have inquired about their legality, and that the trial court should have excluded the social study because of the recordings' illegality.

THE COURT: Okay. Is there a legal objection?

[LACY]: Yes, I do.

THE COURT: Okay. What's that?

[LACY]: There's a lot of discrepancies on the report where she has mentioned some connection to the case that I did not say and she put it as I said it, and that's not true. She --

THE COURT: Those issues -- those type of issues that you have, you'll be able to testify if you desire to explain that. But are there any legal issues you may have?

[LACY]: I don't know. I don't understand any legal action because I'm not a legal attorney, so I don't know if there is. I do have an objection on this document on a lot of the information that she put in was not accurate, which to me it's lying.

THE COURT: Okay. I'm going to go ahead and I'll admit Petitioner's Exhibit 2.[6]

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g); *Transcon. Realty Inv'rs, Inc. v. Wicks*, 442 S.W.3d 676, 681–82 (Tex. App.— Dallas 2014, pet. denied).

---

[6]Later in the hearing, the trial court stated that it had read the social study in its entirety.

An objection is timely if made at the point evidence is offered and before the evidence is admitted. *See* Tex. R. Evid. 103; *Bushell*, 803 S.W.2d at 712. An objection to evidence previously admitted without a timely, specific objection is too late. *Perry Homes v. Alwattari*, 33 S.W.3d 376, 386 n.10 (Tex. App.—Fort Worth 2000, pet. denied); *see also Matbon, Inc. v. Gries*, 288 S.W.3d 471, 490 (Tex. App.—Eastland 2009, no pet.) ("Raising the objection for the first time in a motion for new trial does not satisfy the contemporaneous objection rule if the complaint could have been urged earlier."); *Hoxie Implement Co. v. Baker*, 65 S.W.3d 140, 145 (Tex. App.—Amarillo 2001, pet. denied) (stating the same). Moreover, error is not preserved unless the complaint on appeal matches the objection in the trial court. *In re Y.M.A.*, 111 S.W.3d 790, 791 (Tex. App.—Fort Worth 2003, no pet.).

As the passage above shows, at trial, Lacy objected to admission of the social study only on the bases that it had discrepancies and inaccuracies. Although the trial court then gave Lacy an opportunity to make a legal objection, she did not raise the arguments that she later articulated in the motion for new trial and now brings on appeal. Thus, because Lacy did not make a timely objection that comports with her appellate contentions, we conclude that she failed to preserve her appellate arguments focusing on the admission and use of the social study, and we overrule the issue.[7]  *See* Tex. R. App. P. 33.1(a)(1)(A);

---

[7]Lacy does not directly address preservation of error or direct us to any authority establishing that the complaints in her first issue may be raised for the

7

Tex. R. Evid. 103(a)(1)(A); *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 505 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd); *Gomez v. Allstate Tex. Lloyds Ins. Co.*, 241 S.W.3d 196, 202 (Tex. App.—Fort Worth 2007, no pet.) (finding waiver when an objection to the admissibility of summary judgment evidence was raised for first time in a motion for new trial).

## Lacy's Presentation of Evidence

In her second issue, Lacy contends that the trial court abused its discretion in the "presentation and consideration of the evidence during trial. The trial court summarily interrupted the presentation of the case by [Lacy] without giving her the opportunity to complete her case and present her evidence."

Before Neil began calling witnesses, the trial court instructed Lacy as follows:

---

first time in a motion for new trial or on appeal. In the case upon which Lacy principally relies in her first issue, the spouse preserved error by objecting upon the offering of certain recordings, but the spouse waived error by not making a timely objection to other recordings. *See Collins v. Collins*, 904 S.W.2d 792, 798 (Tex. App.—Houston [1st Dist.] 1995) (en banc op. on reh'g), *writ denied*, 923 S.W.2d 569 (Tex. 1996).

Although Lacy appeared pro se at trial, we note that there "cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel." *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *see also Ramey v. Fed. Home Loan Mortg. Corp.*, No. 14-14-00147-CV, 2015 WL 3751539, at *2 (Tex. App.—Houston [14th Dist.] June 16, 2015, no pet.) (mem. op.) ("Pro se litigants are held to the same standards as licensed attorneys and are not relieved of preservation-of-error requirements.").

[Neil will] proceed first with [his] witnesses. And [Lacy] will be able to do cross-examination. It's got to be related to what's relevant to all of this, about the kids or about custody or issues like that. What he's going to do is he'll ask questions of his witnesses, and then once he finishes questioning his witnesses, you'll be able to question them. And once he rests, then the case will be turned over to you to call your witnesses. You'll ask them questions and then he'll have an opportunity once you're finished to ask the follow-up questions.

Rodriguez was the first witness. After Neil completed his questions for Rodriguez, the trial court permitted Lacy to cross-examine Rodriguez, and she did so. Upon concluding the cross-examination, Lacy stated that she had no further questions for Rodriguez.

After Rodriguez's testimony concluded, Neil called himself as a witness. Before Neil's counsel finished asking Neil questions, the trial court "cut . . . off" counsel to allow Lacy to ask questions. Lacy asked Neil many questions, and during his testimony, at Lacy's request, the trial court admitted documents that, according to her, showed that Neil had physically assaulted her. Also during Neil's testimony, although his counsel objected to some of Lacy's questions on the basis that they were actually statements, the trial court responded that it was giving Lacy "latitude." Eventually, like with Neil's counsel, the trial court limited Lacy's questioning of Neil. The following exchange occurred:

> THE COURT: . . . I've heard the testimony. Did you have any further questions then or did you want to turn him over?
>
> [LACY]: No, I've got a lot of questions, Your Honor . . . .
>
> THE COURT: Okay.

[LACY]: . . . I was involved in domestic violence and he's trying to make this as a divorce case. And I'm trying to prove how violent he has been throughout the years and what he did to my little girl to traumatize her that she doesn't want to be going to him by herself.

THE COURT: Okay. Where we're at, you're going to end up taking time away from your ability to testify if we just sit here on him all day, which we can't do. And so I'm going . . . to cut it off. And I'm not going to allow you to ask any further questions.

Following this exchange, the trial court allowed Lacy to present certain documents, and the court expressed that it would consider the documents. Lacy also made further statements about matters related to her relationship with Neil and then proceeded to ask him more questions despite the trial court's prior instruction to the contrary.[8] After these other questions, the trial court asked Lacy, "[D]o you want to testify or not?" Lacy said that she wanted to testify, and the trial court instructed Neil to leave the witness stand.

At that point, Lacy introduced some photographs and spoke about the significance of them while also answering questions from Neil's counsel about them. The following colloquy then occurred:

THE COURT: Well, let's hold tight for a second. Let me go ahead and have you -- is there some additional things that you want to testify to? I've heard about the knees and I've heard about the car key struggle and the battery removal. I've heard each side's indications as to what occurred to all the property. What else am I missing? What are you wanting to testify to? And let me -- if you'll raise your right hand.

---

[8]Considering the questions before and after the exchange quoted above, Lacy's questions for Neil comprise a larger portion of the reporter's record than his counsel's questions for him.

10

([Lacy] sworn by the Court)

*THE COURT: And is everything you've stated previously today been the truth?*

*[LACY]: Yes.*

THE COURT: All right. Go ahead. [Emphasis added.]

After Lacy briefly testified to various facts and asked for the trial court to meet with one of the children in chambers (the trial court denied the request), the trial court stated, "Well, at this point[,] I'm going to go ahead and render a decision. And because we are jammed up, I'm not going to allow any closing argument." Neither party objected to this statement or attempted to present further evidence. Following the statement, the trial court announced its rulings on the record.

A trial court may exercise reasonable control over the mode and order of examining witness to make the procedures effective for determining truth, protecting witnesses from harassment or undue embarrassment, and avoiding "wasting time." *See* Tex. R. Evid. 611(a); *In re M.A.S.*, 233 S.W.3d 915, 924 (Tex. App.—Dallas 2007, pet. denied) ("A trial court has the authority to control the presentation of evidence so as to avoid needless consumption of time."). We review the trial court's management of a trial and its limitation on the presentation of evidence for an abuse of discretion. *M.A.S.*, 233 S.W.3d at 924; *Great Glob. Assurance Co. v. Keltex Props., Inc.*, 904 S.W.2d 771, 777 (Tex. App.—Corpus

11

Christi 1995, no writ); *Wal-Mart Stores, Inc. v. Cordova*, 856 S.W.2d 768, 773 (Tex. App.—El Paso 1993, writ denied) (op. on reh'g).

Based on our review of the record, including the facts summarized above, we cannot conclude that the trial court abused its discretion in the manner that it conducted the trial. Instead, it appears that on several occasions, the trial court granted leeway and provided guidance to Lacy in the presentation of her case, including when the court allowed her to leave the courtroom to get paperwork from her car; instructed her about the manner in which the presentation of witnesses would proceed; asked her whether she had objections to exhibits that Neil offered; advised her that she needed to ask questions to witnesses rather than make statements; prompted her to offer a property inventory and appraisement if she had one (she said she did not);[9] curtailed Neil's counsel's questioning of Neil so that she could ask him questions; gave her "latitude," over Neil's objections, when she continued to make statements instead of asking questions; and allowed her to ask Neil many further questions even after the court had stated that her questioning of him was over.

Also, although the trial court limited Lacy's testimony at the end of the trial, it also appeared to consider as evidence the many narratives that she had made—in the course of ostensibly asking questions—before she began formally testifying. Finally, the court could have reasonably found that extending the

---

[9]The record belies Lacy's argument on appeal that she was "not given the opportunity to present her proposed property division."

hearing would have been unproductive because after the court swore in Lacy as a witness so that she could begin testifying, she instead immediately focused on evidence that she wanted her twelve-year-old daughter to provide and on testimony that she would have presented from a woman who had recently died.

On our careful review of the record, we hold that the trial court did not abuse its discretion in the manner that it conducted the trial and in its limitation of Lacy's presentation of evidence. *See* Tex. R. Evid. 611(a); *M.A.S.*, 233 S.W.3d at 924; *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) ("[A] trial court may properly intervene to . . . expedite the trial . . . and to prevent what it considers to be a waste of time."); *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("[T]he court's 'inherent power' and the applicable rules of procedure and evidence accord judges broad, but not unfettered, discretion in handling trials."), *cert. denied*, 516 U.S. 868 (1995). We overrule Lacy's second issue.

## Conclusion

Having overruled both of Lacy's issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DELIVERED:  December 3, 2015

13